IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

———————————

No. 09-2919

LUIS M. NARVAEZ,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

———————————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 09-cv-222—**Barbara B. Crabb**, *Judge*.

———————————

ARGUED DECEMBER 7, 2010--DECIDED JUNE 3, 2011

AMENDED DECEMBER 6, 2011[*]
———————————

Before RIPPLE, KANNE and SYKES, *Circuit Judges*.

———————————

[*] This opinion is being released initially in typescript form.

RIPPLE, *Circuit Judge*.  In 2003, Luis Narvaez pleaded guilty to bank robbery, a violation of 18 U.S.C. § 2113(a).  The district court sentenced Mr. Narvaez as a career offender under the United States Sentencing Guidelines § 4B1.1 because his record revealed two prior escape convictions involving failure to return to confinement, violations of Wisconsin Statute section 946.42(3)(a).  Mr. Narvaez later filed a motion to vacate his sentence under 28 U.S.C. § 2255(a); he asserted that imposition of the career offender status was illegal in light of the Supreme Court's decisions in *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009).  The district court denied Mr. Narvaez's motion; it ruled that *Begay* and *Chambers* did not apply retroactively to cases on collateral review.  The court then granted him a certificate of appealability.[1]

We conclude that *Begay* and *Chambers* apply retroactively to Mr. Narvaez's case.  Because Mr. Narvaez's career offender sentence was improper, his period of incarceration exceeds that permitted by law and constitutes a miscarriage of justice.[2]  He is therefore entitled to relief under § 2255.  Accordingly, we reverse the judgment of the district court and remand for resentencing without imposition of the career offender status.  No other aspect of the sentence determination is to be disturbed.[3]

---

[1]  The jurisdiction of the district court was based on 28 U.S.C. §§ 1331 and 2255 and 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

[2]  The term "miscarriage of justice" comes from the Supreme Court's holding that a non-jurisdictional, non-constitutional error of law is not a basis for collateral attack under § 2255 unless the error is "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also United States v. Addonizio*, 442 U.S. 178, 185 (1979).

[3]  This opinion has been circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(e).  No judge favored to

(continued...)

# I

## BACKGROUND

In 2003, Mr. Narvaez pleaded guilty to bank robbery, a violation of 18 U.S.C. § 2113(a). The sentencing court designated him as a career offender, *see* U.S.S.G. § 4B1.1, based on two prior escape convictions, under Wisconsin Statute section 946.42(3)(a), that involved failing to return to confinement.[4] The sentencing court's application of the career offender status increased the then-mandatory sentencing range for Mr. Narvaez from 100-125 months to 151-188 months.[5] The court sentenced him to 170 months' imprisonment--the midpoint of the enhanced guidelines range.

Five years later, in *Begay*, the Supreme Court clarified the definition of a violent felony under the Armed Career Criminal Act ("ACCA"). It held that driving under the influence of alcohol did not constitute a violent felony under the statute. *See Begay*, 553 U.S. at 148. The Court explained that the crimes listed in the ACCA "all typically involve purposeful, violent, and aggressive conduct." *Id.* at 144-45 (internal quotation marks omitted). Therefore, the term "violent felony" applies only to crimes that are "roughly

---

[3](...continued)
hear this case en banc.

[4] Under existing circuit precedent at the time of sentencing, Mr. Narvaez's felony escape convictions constituted "crime[s] of violence" within the meaning of the career offender guideline because they were held to "otherwise involve[] conduct that present[ed] a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2). *See United States v. Bryant*, 310 F.3d 550, 553-54 (7th Cir. 2002).

[5] As a career offender, Mr. Narvaez was assigned an offense level of 32. He received a three-level reduction for acceptance of responsibility, resulting in a total adjusted offense level of 29. Under the then-mandatory Sentencing Guidelines, pairing the offense level of 29 with a criminal history category of VI resulted in a guidelines range of 151-188 months.

similar, in kind as well as in degree of risk posed, to the examples [listed in the ACCA] themselves." *Id.* at 143.[6]

In *Chambers*, the Court further explored the definition of a violent felony under the ACCA in the context of a conviction under an Illinois escape statute for failure to report for penal confinement, a statute similar to the Wisconsin law under which Mr. Narvaez was convicted. The Court held that the failure to report was a "passive" offense that did not inherently involve conduct presenting "a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B), and, therefore, "falls outside the scope of the ACCA's definition of 'violent felony.'" *Chambers*, 129 S. Ct. at 691, 693.

Although *Begay* and *Chambers* specifically involved the ACCA, not the Sentencing Guidelines, we have recognized that the definition of a violent felony under the ACCA was "repeated verbatim" by the Sentencing Commission in defining a "crime of violence" in § 4B1.2 and that "[i]t would be inappropriate to treat identical texts differently just because of a different caption." *United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008); *see also United States v. Woods*, 576 F.3d 400, 403-04 (7th Cir. 2009) (noting that the language describing crimes of violence in § 924(e)(2)(B) of the ACCA and § 4B1.2 of the Sentencing Guidelines is identical and, therefore, interchangeable).[7]

---

[6] Section 924(e)(2)(B) of Title 18 defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

[7] Section 4B1.2(a) provides in pertinent part that "[t]he term 'crime

(continued...)

On April 15, 2009, Mr. Narvaez filed a motion under 28 U.S.C. § 2255 to vacate his sentence.[8]  He asserted that, in light of the Supreme Court's recent decisions in *Begay* and *Chambers*, his prior convictions for failure to return to confinement did not qualify as "crimes of violence" within the meaning of the career offender guideline.  The district court dismissed Mr. Narvaez's § 2255 motion.  In its view, *Begay* and *Chambers* did not apply retroactively to cases on collateral review.  The court nevertheless granted Mr. Narvaez a certificate of appealability.

The Government now concedes that *Begay* and *Chambers* decided questions of substantive statutory construction and that they apply retroactively on collateral review.  The Government further concedes that, after *Begay* and *Chambers*, Mr. Narvaez's prior escape convictions for failure to return to confinement do not constitute crimes of violence under the career offender guideline.  Nevertheless, the Government argues that Mr. Narvaez did not satisfy the requirement for the granting of a certificate of appealability because the certificate does not identify a substantial constitutional question, as required by 28 U.S.C. § 2253(c)(2).  The Government also argues that Mr. Narvaez is not entitled to relief because no miscarriage of justice occurred.

---

[7](...continued)
of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a).

[8]  Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence."  *See also supra* note 2.

**II**

**DISCUSSION**

**A.**

The parties agree that Mr. Narvaez's motion under § 2255 was timely and that Mr. Narvaez is not a career offender in light of *Begay* and *Chambers* because both cases apply retroactively to Mr. Narvaez's conviction.

We agree that the motion is timely. Section 2255(f)(3) of Title 28 provides that a motion is timely if it is filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." There is no dispute that the right asserted by Mr. Narvaez--the right not to receive an enhanced sentence based on an incorrect understanding of the term "crime of violence"--was recognized by the Supreme Court in *Begay* and *Chambers*. Mr. Narvaez filed his motion within one year of both the *Begay* and *Chambers* decisions.

We also agree that, in these circumstances, the *Begay* and *Chambers* decisions apply retroactively on collateral review. The retroactivity of a Supreme Court rule depends on whether it is procedural or substantive. *Bousley v. United States*, 523 U.S. 614, 620-21 (1998) (discussing *Teague v. Lane*, 489 U.S. 288, 311 (1989)). In *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 3019 (2011), we observed that "*Begay* narrowed substantially [the defendant]'s exposure to a sentence of imprisonment." With the imposition of the "violent felony" status under the ACCA, the defendant in *Welch* faced, "at a minimum, five years of imprisonment that the law otherwise could not impose upon him under his statute of conviction. Such an increase in punishment is certainly a substantive liability." *Id.* As a result, we concluded that because the *Begay*

rule was substantive, it "is retroactively applicable on collateral review." *Id.*[9]
We have no reason to believe that *Chambers* requires a different analysis.
Indeed, in *Welch*, we noted that the Tenth Circuit recently had held that
*Chambers* was retroactively applicable on collateral review. *See id.* at 413-
14; *see also United States v. Shipp*, 589 F.3d 1084, 1089, 1091 (10th Cir.
2009) (holding that *Chambers* articulated "a substantive rule of statutory
interpretation" because a defendant who "does not constitute an armed career
criminal . . . [has] received a punishment that the law cannot impose upon
him." (internal quotation marks omitted)). *Chambers*, like *Begay*, falls
within the class of substantive decisions that "prohibit[] a certain category of
punishment for a class of defendants because of their status or offense,"
*O'Dell v. Netherland*, 521 U.S. 151, 157 (1997) (internal quotation marks
omitted).

## B.

### 1.

We turn now to the Government's argument regarding the certificate
of appealability. One of the requirements for obtaining a certificate of
appealability is that an applicant must make "a substantial showing of the
denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court
has explained that, in this context, a substantial showing requires "a
demonstration that . . . reasonable jurists could debate whether (or, for that
matter, agree that) the petition should have been resolved in a different
manner or that the issues presented were adequate to deserve encouragement
to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)
(internal quotation marks omitted).

---

[9] In *Welch v. United States,* 604 F.3d 408, 429 (7th Cir. 2010), *cert.
denied*, 131 S. Ct. 3019 (2011), we ultimately held that the petitioner's
sentence "was imposed in accordance with governing legal principles"
because his "prior conviction for the Illinois offense of aggravated fleeing or
attempting to elude a police officer was properly treated as a 'violent felony'
under the ACCA."

In this case, the certificate of appealability raises a claim that Mr. Narvaez's illegal designation as a career offender resulted in an increase in his term of imprisonment that deprived him of liberty without due process of law. Relying upon precedent that subsequently has been overruled by *Begay* and *Chambers*, the sentencing court concluded, understandably, that Mr. Narvaez's two prior violent felonies made him a career offender. Consequently, Mr. Narvaez was made eligible for roughly five additional years of incarceration without *any* justification in the sentencing scheme established by law. The Constitution grants sentencing courts "wide discretion in determining what sentence to impose." *United States v. Tucker*, 404 U.S. 443, 446 (1972). It is well-established, however, that the Due Process Clause applies to certain aspects of the sentencing process. *See Hicks v. Oklahoma*, 447 U.S. 343, 346-47 (1980) (recognizing a due process violation at sentencing when the defendant was deprived of the jury's discretion to impose a lower sentence than the maximum); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (plurality opinion) (noting, in a capital case, that "sentencing is a critical stage of the criminal proceeding" and, therefore, "the sentencing process . . . must satisfy the requirements of the Due Process Clause"). Therefore, Mr. Narvaez has a "constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress." *Whalen v. United States*, 445 U.S. 684, 690 (1980). Certainly, as the district court acknowledged, "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484.

**2.**

We now turn to the merits of Mr. Narvaez's claims.[10]  We have recognized that sentencing errors are generally not cognizable on collateral review, especially when such errors can be raised on direct appeal. *See Scott v. United States*, 997 F.2d 340, 342-43 (7th Cir. 1993) (observing "that arguments of the sort [the defendant] proffers [in his § 2255 petition] must be advanced on direct appeal or not at all").  Mr. Narvaez's case, however, does not come within this general rule.  It presents a special and very narrow exception:  A postconviction clarification in the law has rendered the sentencing court's decision unlawful.  *See Welch*, 604 F.3d at 412–13 (recognizing that a sentencing error is cognizable on collateral review "where a change in law reduces the defendant's statutory maximum sentence below the imposed sentence").  More precisely, it is now clear that Mr. Narvaez never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive *and* violent offenders.

We believe that the Court's decision in *Davis v. United States*, 417 U.S. 333, 346 (1974), speaks to the situation here.[11]  In *Davis*, the petitioner

---

[10]  We have recognized that § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks omitted).  Mr. Narvaez's argument in this appeal is based on two of these statutory grounds.  First, he asserts that he is entitled to § 2255 relief because the sentencing court's application of the career offender status resulted in a complete miscarriage of justice. *See Addonizio*, 442 U.S. at 185.  Second, Mr. Narvaez submits that he is entitled to § 2255 relief because the sentencing court's error amounted to a violation of his due process rights.  Because we believe that a miscarriage of justice entitles Mr. Narvaez to relief, we do not reach Mr. Narvaez's due process claim.

[11]  The Supreme Court has addressed the issue of whether a non-constitutional, non-jurisdictional error is a miscarriage of justice on collateral review in five cases.  Four of these cases involved errors of a procedural

(continued...)

sought § 2255 relief after a subsequent interpretation of the statute, under which he was convicted, established that his conviction and punishment were "for an act that the law does not make criminal." *Id.* at 346. The Supreme Court concluded that "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice." *Id.* at 346 (internal quotation marks omitted); *see also Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002) ("[A] person convicted of an act that the law does not make criminal may obtain collateral relief."). Moreover, in *In re Davenport*, 147 F.3d 605, 610 (7th Cir. 1998), we found that the defendant was "indeed being held in prison for a nonexistent crime," and, accordingly, he may be entitled to collateral relief.[12]

---

[11](...continued)
nature, and the Court held that no miscarriage of justice occurred in those four cases. *See Reed v. Farley*, 512 U.S. 339, 342, 349-50 (1994) (lack of compliance with statutory time limit for commencing trial); *Addonizio*, 442 U.S. at 179, 186-87 (subsequent change in the policies of the United States Parole Commission to consider gravity of the offense in whether to grant parole); *United States v. Timmreck*, 441 U.S. 780, 781, 784-85 (1979) (error under Federal Rule of Criminal Procedure 11 regarding the taking of a guilty plea); *Hill v. United States*, 368 U.S. 424, 425, 428-29 (1962) (denial of allocution at sentencing, which violated Federal Rule of Criminal Procedure 32(a)). In the only case to involve a substantive error, which rendered the sentence unlawful, the Court found that a miscarriage of justice had occurred. *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (subsequent change in law rendered defendant's conviction and sentence unlawful). The misapplication of the career offender status--which increased Mr. Narvaez's sentencing range--is certainly a substantive error more akin to the error in *Davis* than the error in the other cases.

[12] In *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), a federal prisoner filed a motion to vacate, in which he claimed that his conviction under 18 U.S.C. § 924(c) for "use" of a firearm during the commission of a drug offense was illegal in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995). In *Bailey*, the Court resolved an open

(continued...)

Although these cases provide collateral relief when a defendant is innocent of the underlying crime, we believe that reasoning extends to this case, where a postconviction Supreme Court ruling made clear that Mr. Narvaez was not eligible for the categorization of violent offender wrongfully imposed upon him. We have explained that: "When the elements of a crime are narrowed, that change serves to prohibit *any* punishment for the conduct. *Begay* prohibits *some* of that punishment. We believe, however, that this distinction is *one of degree, not one of kind*." *Welch*, 604 F.3d at 415 (last emphasis added). Indeed, in *Welch*, we found the defendant's challenge to his sentence under the ACCA "analogous" to the situation in *Davis* where the defendant's punishment "for an act that the law does not make criminal" resulted in "a complete miscarriage of justice." *Id.* at 413 n.6 (internal quotation marks omitted).

Our decision in *Welch* addressed a sentence under the ACCA, but the definition of "violent felony" under the ACCA is the same as the definition of "crime of violence" under the Sentencing Guidelines. As a result, "[i]t would be inappropriate to treat identical texts differently just because of a different caption." *Templeton*, 543 F.3d at 380.[13] Moreover, at the time of Mr. Narvaez's sentencing, the Guidelines were *mandatory*. The imposition of a career offender status therefore increased the sentencing range the district court was authorized to employ. *See United States v. Booker*, 543 U.S. 220, 234 (2005) ("Because [the Guidelines] are binding on judges, we have consistently held that the Guidelines have the force and effect of

---

(...continued)

question regarding the definition of the term "use" in the statute, holding that "use" of a firearm requires more than "mere possession." 516 U.S. at 143. We held in *Davenport* that, in light of the Court's *Bailey* decision, the prisoner was "being held in prison for a nonexistent crime," and, therefore, may be entitled to collateral relief based upon his *Bailey* claim. 147 F.3d at 610.

[13] *Accord United States v. Tiger*, 538 F.3d 1297, 1298 (10th Cir. 2008) (holding, on direct review of a sentence, that "the Court's reasoning in *Begay* applies equally to the sentencing guidelines").

laws.").

This case therefore involves the classifying of an individual as belonging to a subgroup of defendants, repeat violent offenders, that traditionally has been treated very differently from other offenders. To classify Mr. Narvaez as belonging to this group and therefore to increase, dramatically, the point of departure for his sentence is certainly as serious as the most grievous misinformation that has been the basis for a granting habeas relief. *Cf. Tucker*, 404 U.S. at 447 (granting habeas relief because the trial judge based the defendant's sentence in part upon prior convictions that were later determined to be invalid). Accordingly, we believe that a miscarriage of justice occurred.

The Government submits, however, that the sentencing court's error in this case does not warrant § 2255 relief. Unlike the situation under the ACCA, Mr. Narvaez's 170-month sentence was actually within the authorized 20-year statutory maximum for his crime. Therefore, the Government reasons that, because Mr. Narvaez would be exposed to the full range of punishment authorized by Congress for his crime at resentencing, and would remain eligible for the identical 170-month sentence under the advisory guidelines, his claim does not present a fundamental defect.

We cannot accept this argument. The fact that Mr. Narvaez's sentence falls below the applicable statutory-maximum sentence is not alone determinative of whether a miscarriage of justice has occurred. The imposition of the career offender status branded Mr. Narvaez as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense. It created a legal presumption that he was to be treated differently from other offenders because he belonged in a special category reserved for the violent and incorrigible. No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence. His designation as a career offender simply took as unchallenged a premise that was not true and gave him no way of avoiding the consequences of that designation. The sentencing court's misapplication of the then-*mandatory* § 4B1.1 career offender categorization in Mr. Narvaez's case was the lodestar to its

guidelines calculation. It placed him in a very special status for the calculation of his final sentence solely because the court ruled that he was a career offender and that the corresponding guidelines required such a status. Speculation that the district court today might impose the same sentence is not enough to overcome the fact that, at the time of his initial sentencing, Mr. Narvaez was sentenced based upon the equivalent of a nonexistent offense. As the Supreme Court put it in *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980), to assume that the same sentence would have been imposed in the absence of the career offender provision is "frail conjecture" that evinces in itself "an arbitrary disregard of the petitioner's right to liberty." This error clearly constitutes a miscarriage of justice. The Government is correct that Mr. Narvaez does not have an absolute right to a lower sentence. Nevertheless, he does have an absolute right not to stand before the court as a career offender when the law does not impose that label on him.

The career offender status illegally increased Mr. Narvaez's sentence approximately five years beyond that authorized by the sentencing scheme. Therefore, Mr. Narvaez's claim goes to the fundamental legality of his sentence and asserts an error that constitutes a miscarriage of justice, entitling him to relief.[14] Because we conclude that Mr. Narvaez is entitled to relief

---

[14] The Government invites our attention the Eleventh Circuit's recent decision in *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc). The Eleventh Circuit in *Gilbert*, however, explicitly did not address the issue in this case, namely whether a guidelines misapplication claim based on a new Supreme Court rule is cognizable in an *initial* collateral attack. The Eleventh Circuit concluded that it had "no reason to decide that issue because this is not [the defendant]'s first collateral attack on his sentence." *Id.* at 1306.

The Government also invites our attention to the recent decision in *Sun Bear v. United States*, 09-2992, 2011 WL 2683183 (8th Cir. July 12, 2011) (en banc). Unlike the defendant in *Sun Bear*, Mr. Narvaez's sentence was not within the sentencing range had the career offender status not been applied. Nevertheless, to the extent a tension between this opinion and the Eighth Circuit's reasoning in *Sun Bear* exists, we respectfully disagree with

(continued...)

based on his claim of miscarriage of justice, we do not reach his due process claim.

**Conclusion**

The judgment of the district court denying Mr. Narvaez's motion for relief under § 2255 is reversed and remanded. On remand, the district court is to impose the sentence applicable without the imposition of a career offender status. No other aspect of the sentence is to be revisited.

REVERSED and REMANDED with INSTRUCTIONS

_____

(...continued)
our colleagues on the Eighth Circuit.