HILL, Circuit Judge,
dissenting:
This is a simple case. Rozier’s sentence was enhanced under the career offender guideline because he had two prior violent felony convictions, one of which was for Florida BOLEO, which at the time was thought by us to qualify as a crime of violence. See United States v. Rozier, 37 Fed.Appx. 499 (11th Cir.2002) (“Rozier I”) (affirming enhancement on direct appeal). Later, in Johnson, the Supreme Court made clear that we were wrong and the Florida BOLEO statute is not a crime of violence because it permits conviction for a mere touching of the officer.
After Johnson, Rozier filed a federal habeas petition under § 2255 requesting that he be resentenced without the erroneous enhancement, which has him presently incarcerated far beyond what his sentence would have been without the enhancement.[1] Rozier’s petition argued that Johnson was in conflict with Rozier I because Johnson made clear that the Florida BOLEO statute used to enhance his sentence is not — and never was — a crime of violence and, therefore, he is not — and never was — a career offender. Rozier specifically argued to the district court that, after Johnson, Florida BOLEO is not a crime of violence under the career offender guideline’s elements or residual clauses.
The district court agreed. It held that, after Johnson, the Florida BOLEO statute is not a valid predicate offense under the career offender guideline. Furthermore, it agreed with Rozier that Johnson represented a change in the substantive law governing his sentence such that, if the decision were applied retroactively, it would require Rozier to be resentenced without the career offender enhancement. The district court was concerned, however, about it being the first to hold that Johnson should be applied retroactively. It decided that it should not, and certified that question — and that question only — to us. No other question is before us.
That is why this case is simple. The government has conceded both here and elsewhere that Johnson must be applied retroactively.[2] The majority opinion recognizes this concession. Therefore, we should remand this case for re-sentencing.
Instead, the majority decides this case on an issue that has not been certified to *688 us by the district court and, for that reason, has neither been briefed nor argued to us by the parties. When asked at oral argument about this issue — -whether Rozier’s enhancement was affirmed under the residual clause and was not, therefore, in conflict with Johnson — the government admitted that it had not raised this defense of Rozier’s enhancement.[3]
Having undertaken to decide this case upon an issue not certified to us, the majority then holds that there is no conflict between Johnson and Rozier I without one word of analysis. It baldly states that there is no conflict because Johnson evaluated the BOLEO statute under the elements clause of the career offender guideline, while Rozier I was decided under the residual clause. This is surprising.
It was clear to the district court,[4] and the government,[5] and it is clear to me that Johnson is in conflict with Rozier I. Johnson holds that the Florida BOLEO statute is not a crime of violence under the Guidelines because one of its elements permits conviction for a mere non-violent touching. The majority’s implicit assumption that the same statute with the same fundamental defect may nonetheless be resuscitated under the residual clause as a valid enhancement statute is mistaken. If the BOLEO statute is not a crime of violence because one of its elements permits conviction without any physical force — for a mere touching — it follows that it cannot be a crime of violence under the residual clause because it still permits conviction without any physical force and, therefore, without a “serious potential risk of physical injury to another.” Rozier I does not survive Johnson.[6]
It would appear that the district court, the government and I are not the only ones who subscribe to this view. In this court’s opinion on direct appeal in Johnson, the panel wrote, “If [Florida BOLEO] fits within that description [the elements clause], it is a violent crime for ACCA purposes; if not, then not.” 518 F.3d at *689 1320 (emphasis added). In reversing that panel’s subsequent conclusion that Florida BOLEO does satisfy the elements clause, the Supreme Court refused to remand for reconsideration of the statute under the residual clause, specifically citing the panel’s aforementioned conclusion that the statute could not qualify under that clause. See Johnson, 130 S.Ct. at 1274.
But now, the majority assumes that there is no conflict between Johnson and Rozier I because they deal with different clauses of the career offender guideline. I disagree.
After the Supreme Court’s decisions in Begay and Chambers, we acknowledged the conflict between the Supreme Court’s narrowing of the residual clause in those cases with our prior expansive holdings of the reach of that clause. When the opportunity arose, we reversed several of our prior holdings that statutes other than DUI {Begay) and escape {Chambers) are crimes of violence.[7] We did not duck the issue of whether our prior holdings affirming enhancements under other statutes were in conflict with Begay and Chambers because those cases dealt with different statutes. Nor did we opine that the teaching of those cases was irrelevant to the different statutes under review, as does the majority in this case. On the contrary, we recognized that we were bound by those cases in reconsidering the scope of the residual clause. Similarly, if we were to analyze whether Johnson is in conflict with Rozier I, as the majority fails to do, I would think that we would find Begay and Chambers relevant to the issue of whether the Florida BOLEO statute is a crime of violence under the residual clause.[8]
I reluctantly conclude that our court is determined to deny relief to every confined habeas petitioner whose sentence has been unlawfully enhanced under either the career offender guideline or the armed career criminal statute. We have repeatedly held that procedural rules deprive us of the ability to correct an enhancement that we all agree is error because it was not authorized by law when imposed. To the petitioner, who is serving five, ten or even fifteen years more than he would be in the absence of the error, we say, “Sorry. We know your enhancement was error, but there is nothing we can do. Our hands are tied by procedural rules. We cannot fix this.”
We do this in the name of “finality.” We say we are protecting the integrity of *690 the Great Writ; we cannot go about correcting old mistakes or no conviction or sentence will ever be final.
Of course, finality is desirable. There was a time when there appeared to be no finality in our habeas procedures. The rules we adopted to introduce some finality into the habeas process were long overdue.
But finality must not be our highest goal. The Great Writ is enshrined in our Constitution because we believe that no one may be deprived of life, liberty, or property by the government in violation of law. If a petitioner can show that he is illegally incarcerated, he is entitled to release. Fairness requires it. Justice is the ultimate goal in the grant of the Writ.
But we have increasingly come to define what is “just” by what our procedural rules permit. Recently, the State of Alabama, a panel of this court, and two justices of the Supreme Court agreed that an Alabama prisoner could be put to death as the result of his lawyers — who abandoned his case — having missed a filing deadline. Our court held that we would not — could not — consider the merits of his claim due to this procedural default.
I agree with the member of this panel who dissented in the Alabama case, writing that in certain cases procedure must “yield to the imperative of correcting a fundamentally unjust [sentence].” Seven members of the Supreme Court agreed with that view, reversing our court. See Maples v. Thomas, — U.S. —, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012).
In Maples, there was no certainty that there had been error in the conviction or sentence. In Rozier’s case, however, there is certainty. We know that the enhancement of his sentence was error.
I must confess I am bewildered that both the United States, through its Department of Justice, and this court appear to rejoice when access to constitutional protection for the correction of admitted and highly prejudicial error is found to be blocked by unmet procedural “safeguards.” On the contrary, I should have thought that the correction of such error would be celebrated by all sworn to uphold the Constitution. As is inscribed in the office rotunda of the Attorney General of the United States, “The United States wins its point whenever justice is done its citizens in the courts.”[9] Some in the Department of Justice seem to believe that the inscription reads, “Justice is done when the United States wins.”
Clearly justice is not the intended beneficiary of these procedural safeguards. On the contrary, the safeguards are designed to protect finality. If these new rules require that finality trump justice, then perhaps, as one member of this panel has opined elsewhere, they are unconstitutional. In any event, I cannot join in this elevation of form over substance; of finality over fairness.
Due process is the defining virtue of our system of criminal justice. But we should ask ourselves why. Is it because it achieves finality? Or is it because we believe that, more often than not, we will reach a correct result where certain process is due the criminal defendant. The goal is a correct result — not simply the provision of process. To be sure, we do not guarantee a correct result. But where all know the result is error, to adhere to *691 the process as though it were the end goal is unfair in the purest sense of the word.
This is especially true where the petitioner is in federal custody, not state custody. We safeguard finality for state court convictions out of respect for the dual principles of comity and federalism. Neither of these considerations is due the erroneously sentenced federal prisoner.
It seems to me that the majority has striven mightily to avoid granting the writ to someone currently deprived of liberty in violation of law. I am weary of our court’s relentless effort to put more and more procedural angels on the head of the habeas pin. At some point, we must concede, as the Seventh Circuit did recently, that common sense and basic fairness require that we correct these unlawfully enhanced sentences. See Narvaez v. United States, 674 F.3d 621 (7th Cir.2011).
I respectfully dissent.

. We know this because the district court has said so. Rozier received five years of enhancement.

. The Johnson decision is widely regarded to be retroactive.

. The government has waived this issue before the district court and before this panel. The Certificate of Appealability makes that clear. I feel certain that, if the petitioner had failed to make an argument to us, we would not now be making it for him.

. The district court said that Rozier "may well receive a time-served sentence if the change in law set forth in f.Johnson] was applied retroactively to his benefit.” (citation omitted). The certified question posited that if Johnson were retroactive to Rozier’s case, "he should be re-sentenced.”

. The government has opined more than once in this case and elsewhere that the Florida BOLEO statute does not qualify as a crime of violence under the career offender guideline. For example, in its response to Rozier’s request for bail pending appeal, the government stated, "On June 22, 2010, in United States v. Williams, the Eleventh Circuit citing Johnson, held that a conviction for Battery on Law Enforcement Officer standing alone could not serve as a prior violent felony under the career offender guideline.” (citations omitted). See DE 27. In United States v. Hayes, 409 Fed.Appx. 277 (11th Cir. Dec. 16 2010) the government announced that it has "re-evaluated its position” that Florida BOLEO is a crime of violence and "now concedes that the conviction for battery on a law enforcement officer does not constitute a violent felony for purposes of the ACCA.” In yet another case, the government dropped its appeal of the district court’s grant of § 2255 relief to a defendant also enhanced under the Florida BOLEO statute. Haugabook v. United States, Case. No. 10-14088-Civ-Graham. Rozier has been serving his enhancement — deprived of his liberty — for the two years since the government conceded its unlawfulness. He has three years of enhancement yet to serve.

.It appears to me that we have already so held. See Hayes, 409 Fed.Appx. at 278 (in Johnson, the Supreme Court “held that the Florida crime of battery on a law enforcement officer is not a qualifying crime under the ACCA”).

. For example, in United States v. Archer, 531 F.3d 1347, 1352 (11th Cir.2008), we "extrapolated” from the Begay DUI decision that carrying a concealed weapon could no longer qualify as a violent felony in this circuit. We wrote in Gilbert v. United States, 640 F.3d 1293, 1301-02 (11th Cir.2011) (en banc) that “Begay had effectively overruled our holding in Gilbert I.” Similarly, in United States v. Harrison, 558 F.3d 1280, 1287 (11th Cir.2009), we recognized Begay required us to reexamine Florida's "fleeing and eluding” statute, held to be a violent felony in United States v. Orisnord, 483 F.3d 1169 (11th Cir.2007). Finally, in United States v. Lee, 586 F.3d 859 (11th Cir.2011), we relied upon Be-gay and Chambers in overruling our prior decision in United States v. Taylor, 489 F.3d 1112 (11th Cir.2007) that escape is always a violent felony (the Taylor decision had been vacated by the Supreme Court after it ruled in Chambers).

. We have held that under Begay, as limited by Sykes v. United States, — U.S. —, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), offenses fall within the residual clause if, in the ordinary case, "they categorically pose a serious risk of physical injury that is similar to the risk posed by one of the enumerated crimes.’’ United States v. Chitwood, 676 F.3d 971, 979 (11th Cir.2012) (emphasis added). Battery by a mere touching does not, in the ordinary case, result in a degree of risk similar to any of the enumerated crimes in the career offender guideline (burglary of a dwelling, arson, extortion, or the use of explosives).

. This saying is ascribed to Attorney General Frederick William Lehman who, in representing the United States government in the Supreme Court, would, when he believed it called for, confess judgment and admit that the government had been wrong all along even when supported by a lower court’s prior decision.