ROVNER, Circuit Judge,
dissenting.
Last year this court reviewed a remarkably similar case but reached the opposite result. The majority’s rationale for a different result here is illusory and for this reason I respectfully dissent.
In Narvaez v. United States, 674 F.3d 621 (7th Cir.2011), Luis Narvaez, like Hawkins, stood before a sentencing court *826 as a career offender, having been convicted (just like Hawkins) twice before of escape for failing to return to confinement. Id. at 623. Just as with Hawkins, the sentencing court’s application of the career offender guideline increased Narvaez’s Guidelines range significantly, but did not increase it past the statutory maximum. Id. at 629. After the Supreme Court in Chambers clarified that a failure to return to confinement was not a crime of violence and thus did not trigger a career offender enhancement (Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009)), Narvaez, like Hawkins, filed a postconviction motion under 28 U.S.C. § 2255 to vacate his sentence. We noted that although sentencing errors are generally not cognizable on collateral review, Narvaez’s case presented a narrow exception, one in which a miscarriage of justice entitled Narvaez to relief. Narvaez, 674 F.3d at 630.
The premise of the opinion in Narvaez was that the defendant had “an absolute right not to stand before the court as a career offender when the law does not impose that label on him.” Id. at 629. Once Narvaez had been labeled a career offender, all of the court’s calculations and assessments were filtered through that lens and consequently,
[t]he imposition of the career offender status branded Mr. Narvaez as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense. It created a legal presumption that he was to be treated differently from other offenders because he belonged in a special category reserved for the violent and incorrigible. No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence.
Id. at 629. The Narvaez court was not assuaged by the fact that the defendant’s sentence fell below the applicable statutory maximum sentence. Id. This, the court concluded, was not alone determinative of whether a miscarriage of justice had occurred. Id. The miscarriage, as highlighted in the block quotation above, was the branding of “career offender.” Such a label, in addition to creating a legal presumption of incorrigibility (or perhaps because of it), increased dramatically the point of departure for the sentence. Id. “[T]o assume that the same sentence would have been imposed in the absence of the career offender provision,” the Narvaez court explained, “is frail conjecture that evinces in itself an arbitrary disregard of the petitioner’s right to liberty.” Id. (internal citations omitted).
Despite the remarkable correlation between the facts and legal posture in Narvaez and this case, the majority gives Narva&z short shrift. It does so, it says, because Narvaez was sentenced before the Supreme Court decided United States v. Booker, when the Guidelines were mandatory and thus the judge was bound by the determination to impose a particular sentence. United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The majority, I fear, hangs its precedent-distinguishing hat on an illusory distinction.
In Booker, the Supreme Court declared that the U.S. Sentencing Guidelines, which courts before had considered mandatory, were now only advisory. Id. at 245, 125 S.Ct. 738. Booker indeed initiated a sea change in sentencing procedures, but those changes do not affect the error in this case. Both before and after Booker, the first step in sentencing was and is for the sentencing judge to begin the sentencing proceeding by correctly calculating the applicable Guidelines range. See Gall v. *827 United States, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). This was “step one” before Booker and remains “step one” now. Our cases post -Booker have routinely held that “although a judge is no longer required to give a Guidelines sentence, he is required to make a correct determination of the Guidelines sentencing range as the first step in deciding what sentence to impose.” United States v. Vrdolyak, 593 F.3d 676, 681-82 (7th Cir. 2010), (citing Gall, 552 U.S. at 50, 128 S.Ct. 586); United States v. Gibbs, 578 F.3d 694, 695 (7th Cir.2009). The Guidelines must be the starting point and the initial benchmark. United States v. Hurt, 574 F.3d 439, 442-43 (7th Cir.2009). In case after case we have emphasized that even after Booker, a failure to initially calculate the Guidelines properly constitutes a legal error. See, e.g., United States v. Chapman, 694 F.3d 908, 913 (7th Cir.2012); United States v. Halliday, 672 F.3d 462, 472 (7th Cir.2012); United States v. Baker, 655 F.3d 677, 683 (7th Cir.2011); United States v. Long, 639 F.3d 293, 298 (7th Cir.2011); United States v. Snyder, 635 F.3d 956, 961 (7th Cir.2011).
In short, the error that the district court made (and it did indeed err — even the majority admits that) occurred in the sequence of the sentencing procedure unaltered by Booker. Thus, there is no distinction between this case and Narvaez.
It is true, of course, that the sentencing court in this case was not required to sentence Hawkins according to the Guidelines calculations. Step two of the sentencing procedure requires the court to consider the factors enumerated in 18 U.S.C. § 3553 to evaluate whether the Guidelines range is truly proper given particular considerations. Gall, 552 U.S. at 49-50, 128 S.Ct. 586. But the harm to Hawkins had already occurred — before the court could even turn to the advisory part of the Guidelines. The judge could now only view Hawkins through career-offender tinted glasses, and his baseline consideration before applying the § 3553 factors was multitudes higher than it would have been otherwise.
Suppose, for example, that a sentencing court determined that because of Hawkins’ mental or physical condition, a below-Guidelines sentence was warranted. If Hawkins stood before the court as a career offender, the judge would have calculated his sentence as a career offender and then considered those mitigating § 3553 factors, beginning from the 151-month benchmark. Were he not a career offender, the judge would begin by calculating the 15-21[1] month range before considering any § 3553 factors. The majority admits that Hawkins might not have received the same sentence had he not been labeled a career offender. I think it rather more fair to conclude that there was no chance that Hawkins would have been sentenced to 151 months after Chambers. Faced with a Guidelines range of 15-21 months, or even 24-30 months, a five to tenfold increase in the sentence would have been shocking. In short, the injustice here is not rectified by Booker The error and prejudice occurred in the proper calculation of the Guidelines as a starting point — something that has not changed now that the Guidelines are merely advisory. Narvaez is our precedent and a fresh one at that.[2] This *828 precedent demands that Hawkins be treated in just the same manner as Narvaez.
The majority is correct that the law has changed, but the relevant change occurred in Chambers and not Booker. The majority admits that the judge erred when he thought a walk-away escape was a crime of violence, but argues that the retroactive application of the Chambers rule should not apply lest it undermine the principle of finality integral to the criminal process. Were we writing on a blank slate, we might argue against the majority’s elevation of finality over fairness, as did our dissenting brothers in the 8th and 11th Circuits in indistinguishable cases, arguing that finality must not trump justice where a court must correct a career offender enhancement that all agree was imposed in error. Rozier v. United States, 701 F.3d 681, 689-91 (11th Cir.2012) (Hill, J., dissenting); Meirovitz v. United States, 688 F.3d 369, 373 (8th Cir.2012) (Bright, J., dissenting) (“without finality there can be no justice ... [i]t is equally true that, without justice, finality is nothing more than a bureaucratic achievement.”) petition for cert. filed, (U.S. Nov. 20, 2012) (No. 12-7461). But we need not engage in this policy dispute about the virtues and failures of finality, for although the majority discusses at some length the burdens of retroactive application of a new rule, such as the one announced in Chambers, that ship has hoisted the mainsail and left port. This Circuit has already declared that Chambers (and its closely related ancestor, Begay) apply retroactively on collateral review. Narvaez, 674 F.3d at 621. See also United States v. Wyatt, 672 F.3d 519, 523-24 (7th Cir.2012) (noting retroactivity of Chambers and Begay); Brown v. Rios, 696 F.3d 638, 640 (7th Cir.2012) (applying Begay retroactively on collateral review); Welch v. United States, 604 F.3d 408, 415 (7th Cir.2010) (Begay rule is retroactively applied on collateral review), cert. denied, — U.S. -, 131 S.Ct. 3019, 180 L.Ed.2d 844 (2011); United States v. Shipp, 589 F.3d 1084, 1090-91 (10th Cir. 2009) (applying Chambers retroactively on collateral review); Sun Bear v. United States, 611 F.3d 925, 927 (8th Cir.2010) (applying Begay on collateral review).
The majority fears that errors in the interpretation of the Guidelines, if always retroactive, would greatly increase the number of § 2255 motions and re-sentencings. The opinion in Narvaez did not alter the fact that ordinarily errors in calculations of the Sentencing Guidelines are not cognizable in a § 2255 motion. Welch, 604 F.3d at 412. An intervening change in the law made applicable retroactively, however, can indeed require a court to recognize a “miscarriage of justice,” that must be correctable on collateral review. Id. at 412-13, nn. 4 & 6. Stanback v. United States, 113 F.3d 651, 654 (7th Cir.1997). See also Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). But retroactive application of a law is not the norm and depends on whether a new rule is considered to be procedural or substantive. It is clear in this Circuit that Chambers “falls within the class of substantive decisions that prohibit a certain category of punishment for a class of defendants because of their status or offense” and thus is a substantive rule retroactively applied. Narvaez, 674 F.3d at 626.
Furthermore, this is not an error that Hawkins could have raised on direct review. At the time, we would have viewed as frivolous a challenge to the established principle that a walk-away crime is a violent offense. United States v. Chambers, 473 F.3d 724, 726 (7th Cir.2007), rev’d, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009); Wyatt, 672 F.3d at 520 (marking the change in law after Chambers and noting that on the defendant’s direct ap *829 peal it had been well-established that a walk-away escape was a crime of violence); United States v. Golden, 466 F.3d 612, 614 (7th Cir.2006); United States v. Rivera, 463 F.3d 598, 600-01 (7th Cir.2006); United States v. Bryant, 310 F.3d 550, 553-54 (7th Cir.2002); United States v. Franklin, 302 F.3d 722, 724 (7th Cir.2002); See also Stanback, 113 F.3d at 655-656 (noting that a defendant cannot be required to posit an argument that would not have had any relevance prior to an intervening change in Supreme Court law). Thus the majority’s example of a probation service recommending the incorrect sentence to an unnoticing judge is inapt. The latter error could have been addressed on direct review.
The majority further characterizes this error in calculation of a guideline as “less serious” than one that violates a statute or regulation. I suspect that the defendant sitting in prison for twelve years, rather than fifteen months because of a conceded Guidelines miscalculation would beg to differ. Few Guidelines interpretations have as pronounced an effect on a sentence than the career offender designation. Does it make any sense to the goals of justice to determine that an improperly calculated sentence that exceeds the statutory maximum by one month is a serious error worthy of post conviction relief, but that an improperly calculated error that exceeds the Guidelines range by eleven years (but is still within the statutory maximum) is not? That is why we said in Paladino that even where a sentence falls within the sentencing range that Congress had created for a defendant’s conduct, it is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person. United States v. Paladino, 401 F.3d 471, 483 (7th Cir.2005). And in the context of considering prejudice under a Strickland analysis, the Supreme Court has instructed that any amount of errantly imposed actual jail time matters. Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); United States v. Seacott, 15 F.3d 1380, 1384 (7th Cir.1994) (“we are unaware of anyone who would maintain that even one additional hour of confinement, much less a day, or week of confinement, ‘doesn’t matter.’ ”)
The idea that Sentencing Guidelines are not “laws” that can be challenged in a § 2255 motion was first floated in this Circuit in Scott v. United States, 997 F.2d 340, 341 (7th Cir.1993). In that case, we posed the issue as an unresolved question, but it has since crept into our case law as an accepted premise. See, e.g., Welch, 604 F.3d at 412 (citing Scott for the proposition “that deviations from the Sentencing Guidelines generally are not cognizable on a § 2255 motion.”) But the Supreme Court has stated only that if an error is neither jurisdictional nor constitutional, in order to be cognizable on collateral review, it must present “exceptional circumstances” in which a fundamental defect inherently results in a complete miscarriage of justice. See Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The Court has not addressed whether a Guidelines case could reach such exceptional levels. Id. See also Sun Bear v. United States, 644 F.3d 700, 707 (8th Cir.2011) (en banc) (Melloy, J., dissenting) (noting that the issue of whether Sentencing Guidelines errors are cognizable in § 2255 proceedings has not been decided by the Supreme Court or the 8th Circuit). In Scott, we surmised, without deciding, that Guidelines errors should not be redressable upon § 2255 review because, given their status, “[o]ne full and fair opportunity to make arguments under the Guidelines — at sentencing and on direct appeal — is enough.” Id. at 342. We know, however, that Hawkins did not and *830 could not have had one full and fair opportunity to make his argument under the Guidelines because his argument did not exist until the Supreme Court ruled in Chambers — after his direct appeal had concluded. It was just such an intervening change in law which convinced the Supreme Court to declare a miscarriage of justice in Davis, despite the Court’s long history of denying such a characterization for non-constitutional, non-jurisdictional errors. Davis, 417 U.S. at 346-47, 94 S.Ct. 2298. The Davis Court concluded that punishment for an act that the law does not make criminal inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255. Id. at 346-47, 94 S.Ct. 2298. Thus being punished as a career offender for an act that the law does not consider a prerequisite for career offender status results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255.
As with Davis, an intervening reinterpretation of the law also motivated this court in Paladino to find a miscarriage of justice where the change could have influenced a judge’s baseline consideration in sentencing.[3] Paladino, 401 F.3d at 483. Of course, the change in law in Paladino occurred while the case was on direct review, but that distinction blurs when one considers the posture of Paladino. By the time the Paladino cases came before this court, we had already concluded that Booker could not be applied retroactively. Thus a Booker error that occurs after a judgment becomes final cannot be corrected on post-conviction review. Paladino, 401 F.3d at 481. Chambers, however is applied retroactively. Moreover, because Paladino involved plain error review, we were implementing the very same “miscarriage of justice” standard in Paladino as we are in this case — that is “whether the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings.” Id. at 481, (citing Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). In Paladino, the miscarriage of justice occurred because, at sentencing, the judges were under the mistaken understanding that the Guidelines were mandatory rather than advisory.[4] That errant belief affected the judges’ thought processes as they reviewed the sentencing options. This was not an error that could have been knowable and thus correctable until the Supreme Court decided Booker. The same is true in this case — a judge’s errant belief about the sentencing law greatly affected his thought process. That error could not have been known and thus corrected until the Supreme Court announced its decision in Chambers.
The majority tells us that the error in Paladino was more serious and consequential, but errantly believing that the career offender enhancement applies when it does not is at least as consequential to a defendant’s sentence than errantly believing that the Guidelines are mandatory when they are not. In the solid majority of Paladino remands, the judge sentenced *831 the defendant exactly as before. See, e.g., United States v. Davis, 682 F.3d 596, 602 (7th Cir.2012); United States v. Harrison, 355 Fed.Appx. 953, 954 (7th Cir.2009); United States v. Sebolt, 320 Fed.Appx. 468, 468 (7th Cir.2009); United States v. Armstead, 309 Fed.Appx. 11, 11 (7th Cir.2009); Coleman v. United States, 309 Fed.Appx. 9, 10 (7th Cir.2009); United States v. Hall, 304 Fed.Appx. 451, 452 (7th Cir.2008);' but see United States v. Steel, 322 Fed.Appx. 455, 456 (7th Cir.2009). Errantly believing that the career offender enhancement applies when it does not, on the other hand, creates a high probability of getting a much longer sentence. First, because the career offender enhancement imposes sentences multitudes higher than otherwise and second, because, as we noted above, the judge is required to begin sentencing with a Guidelines calculation and therefore will commence her sentencing process contemplating a range that is leagues higher than it should be.
It made no difference to the Paladino court that all of the sentences in that case were within the statutory sentencing range and thus; could have been imposed by the judge in any event. Nor should it here. Just as we did not know in Paladino whether the judges would have given the same sentence if they had known at sentencing that the Guidelines were merely advisory, we cannot know whether a judge would have given the same sentence if he had known that the career offender enhancement did not apply. In this case, we know that the judge was highly influenced by the Guidelines range as he said at the Paladino remand:
Over the last 16 plus years, the Sentencing Commission has promulgated and honed the Guidelines to achieve these Congressional purposes. Congress, as well, has approved those Guidelines and has indicated its view that the Guideline sentences achieve its purity. Therefore, the Court will, in exercising its discretion, give considerable weight to those Guidelines in determining an appropriate sentence for this defendant.
Also in the exercise of its discretion, the Court will only depart from those Guidelines in unusual cases for clearly identified persuasive reasons. The defendant’s request for a sentence outside of the advisory Guidelines is just not persuasive today. Even though a departure is authorized in the case, I would choose, and I do choose, not to depart, because I believe departure is just not warranted under the facts and circumstances of this case.
Appellate R. at 12, Tr. 10/28/05 at 34 (emphasis added).
This sounds much like a forbidden presumption that the Guidelines sentence is proper, and thus arguably error of an entirely different sort. See Gall, 552 U.S. at 50, 128 S.Ct. 586. In any event, it certainly demonstrates how, even under an advisory Guidelines system, a mistake in the Guidelines calculations anchored the judge to the higher range and virtually assured Hawkins a sentence ten times greater than one he would have received otherwise. The majority notes that the Guidelines remain influential and asks rhetorically, “how influential?” The answer in this case is clear. The district court judge “g[a]ve considerable weight to the Guidelines,” and noted that he would only “depart” (a word no longer relevant post-Booker, and one that might indicate an inappropriate loyalty to the Guidelines) “from those Guidelines in unusual cases.” Appellate R. at 12, Tr. 10/28/05 at 34.
The majority includes quotations (without citation) to language implying that at resentencing the judge would have imposed the same sentence even without the career offender enhancement. Supra at *832 823. But the quoted language comes from the district court’s order five years later on post-conviction review. The district court judge’s posthoc reasoning in denying collateral review is surely not a reliable indicator of what he would do if ordered to sentence Hawkins de novo without the career offender enhancement, particularly given the dispositive weight the court appears to have given the Guidelines at the time of the Paladino remand. It is one thing for the judge to say, five years later, that he would have sentenced Hawkins to 151 months regardless, and another for him to actually begin with a 15-21 month range and then decide to increase the sentence by another decade.
This case, which demands reversal, will open no flood gates as the majority fears. It involves, first, an uncontroverted mistake of law by the district court — that is declaring Hawkins a “career offender” when he was not; second, an inability to address the error on direct review due to an intervening change in the law, which is, third, applicable retroactively. See Sun Bear, 644 F.3d at 712 (Melloy, J., dissenting). Finally we note again that the application of the career offender enhancement triggers sentencing ranges magnitudes higher than the unenhanced range.
The majority, it seems, has no problem ignoring the error and allowing Hawkins to be sentenced under a career offender guideline that should not apply to him, noting that he is a “hardened criminal” guilty of a “violent assault.” And while the majority is quick to describe the “escape” attempt that turned violent when Hawkins was high on drugs, the majority neglects to inform the reader that the other escape that qualified Hawkins as a career offender occurred when Hawkins merely signed himself out of a halfway house and failed to return. But we need not dwell on these facts. Whether a crime is a violent felony is determined by how the law defines it and not how an individual offender might have committed it on a particular occasion. Begay v. United States, 553 U.S. 137, 141, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). Moreover and more compellingly, this decision will not apply only to Hawkins, but also to the mild-mannered, non-violent offender who panics and fails to return to the halfway house after a day at work. Because this Court has determined that an error in calculating the correct Sentencing Guidelines for such a walk-away offender is not a miscarriage of justice and not a cognizable error, even where the error increases an offender’s sentence tenfold, our mild-mannered, non-violent offender could spend not one year in prison, but twelve and a half when neither Congress, nor the Sentencing Commission, nor likely even the district court that sentenced him thinks he should be there. See Wyatt, 672 F.3d at 524. That seems a poor use of resources and, more importantly, a terrible miscarriage of justice.
For this reason, I would reverse the decision of the district court and remand to the district court to allow Mr.. Hawkins to stand before it without the errantly imposed black mark of a career offender.

. There is some dispute as to whether the range would have been 15-21 months, or 24-30 months. The district court found it unnecessary to decide. In any event, both ranges are magnitudes less than the 151 months that Hawkins received.

. The Narvaez court emphasized that Narvaez’s sentence occurred when the Guidelines were mandatory, but that it had no reason to consider whether or not the distinction mattered. Narvaez, 674 F.3d at 628-29.

. At times we speak of Booker and Chambers as intervening changes in the law. It is a helpful shorthand for the more precise description which is that the law did not change, but rather the Supreme Court informed the courts that they had been misinterpreting the law all along.

. Paladino consolidated several cases for review and concluded that the proper procedure for remedying the error was to, "while retaining jurisdiction of the appeal, order a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence.” Paladino, 401 F.3d at 484.