PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 13-4274

———————————

UNITED STATES OF AMERICA

v.

JOHN DOE,
Appellant

———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-02-cr-00191-001)
District Judge: Honorable Donetta W. Ambrose

———————————

Argued January 12, 2015

Before: AMBRO, FUENTES, and ROTH, Circuit Judges

(Opinion filed: December 9, 2015)


William C. Kaczynski, Esquire     (Argued)
1004 Manor Complex
564 Forbes Avenue

Pittsburgh, PA   15219
          Counsel for Appellant

David J. Hickton
   United States Attorney
Laura S. Irwin          (Argued)
   Assistant U.S. Attorney
Rebecca R. Haywood, Esquire
Margaret E. Picking, Esquire
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA   15219

          Counsel for Appellee

_____

OPINION  OF  THE  COURT
_____

AMBRO, <u>Circuit Judge</u>

Contents

I.    Introduction ....................................................................4
II.   Procedural and Legal History..........................................4
III.  Summary of Our Decision...............................................11
IV.   Standards of Review and Jurisdiction ...........................13
   A.    Mootness.................................................................13
   B.    Jurisdiction to Grant a COA ..................................15
   C.    Should We Grant a COA? .......................................16
      1.    *Begay*'s Arguably Constitutional Dimension.......20
      2.    Doe's Arguably Meritorious *Begay* Claim...........22

3. The District Court's Arguably Wrong Procedural Holdings ................................................. 24

4. Conclusion With Respect to COA ........................ 25

D. Cognizability as a Jurisdictional Limit .................... 25

V. Did the 2008 Motion Count Such That Any Later Motion Was Second or Successive? .............................. 27

VI. Statute of Limitations ................................................... 28

VII. Was Doe Entitled to Rule 60 Relief? ........................... 30

VIII. Procedural Default ....................................................... 35

IX. Retroactivity ................................................................. 37

X. Cognizability ................................................................. 38

A. Supreme Court Guidance ......................................... 38

B. Seventh Circuit ........................................................ 40

C. Fourth Circuit .......................................................... 41

D. Eleventh Circuit ...................................................... 43

E. Eighth Circuit .......................................................... 43

F. Our *Dicta* ............................................................... 44

G. The Government's Argument ................................... 45

H. Synthesis and Conclusion With Respect Cognizability ........................................................... 46

XI. Savings Clause ............................................................. 49

XII. Conclusion ................................................................... 50

> "The whole thing was a very cleverly planned jigsaw puzzle, so arranged that every fresh piece of knowledge that came to light made the solution of the whole more difficult."—Agatha Christie, *Murder on the Orient Express*.

> "It's like kind of complicated to me"—John Doe, on the withdrawal of his § 2255 motion.

## I.    Introduction

John Doe, whose identity we protect because he is a Government informant, appeals from the denial of (1) a 28 U.S.C. § 2255 motion filed in 2012 and (2) a request made in 2013 to reopen a § 2255 motion filed in 2008.  Doe was sentenced pursuant to the then-mandatory Sentencing Guidelines as a "career offender" on the basis of two convictions for simple assault in Pennsylvania.  He argued in his 2008 motion that his convictions were not "crimes of violence" within the meaning of the Guidelines and thus he was not a career offender.  Our precedent foreclosed that argument when he made it, but, in light of the Supreme Court case *Begay v. United States*, 553 U.S. 137 (2008), we reversed ourselves, and Doe's argument became plausible.  He therefore filed another § 2255 motion, but it too was denied.

This case presents many procedural complexities of first impression within this Circuit.  If Doe can manage the Odyssean twists and turns of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), including the Scylla of the second-or-successive bar and the Charybdis of the statute of limitations, he may find a meritorious claim at the end of his journey.  However, we do not definitively reach the merits here and instead remand to let Doe's case continue its uncertain course.

## II.    Procedural and Legal History

In 1991 Doe pled guilty in Pennsylvania to cocaine possession.  In 1996 and 2000 (also in Pennsylvania), he pled guilty to two simple assaults.  In 2003, he pled guilty in federal court to distribution and possession with intent to distribute at least five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(iii) (2000).  Doe was

4

sentenced to 262 months' incarceration pursuant to the then-mandatory Sentencing Guidelines and case law that has since been overruled. This is the sentence he now attacks.

The Sentencing Guidelines provide a significant enhancement for "career offenders," defined as those with "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). Doe's 1991 drug conviction was not relevant to the career-offender designation because it occurred more than 10 years before his federal conviction and did not result in a sentence longer than one year and one month of imprisonment.[1] Thus Doe was a career offender only if both of his prior assaults were "crime[s] of violence." *Id.* § 4B1.1(a)(3). His sentence in 2003 occurred under our case law categorically designating simple assault in Pennsylvania as a crime of violence, and hence Doe was a career offender. *United States v. Dorsey*, 174 F.3d 331, 333 (3d Cir. 1999). He was sentenced to 262 months of imprisonment, the bottom of the Guidelines range, and did not appeal. Without the career-offender enhancement, Doe's Guidelines range would

---

[1] *See* U.S.S.G § 4B1.2(c)(2) (offenses must be counted under § 4A1.1's calculation of criminal history points in order to count for career offender purposes); § 4A1.1 Commentary (cross-referencing § 4A1.2 for instructions on how to compute criminal history points); § 4A1.2(e)(2) (excluding from calculation offenses for which the sentence received is less than one year and a month and that occurred more than ten years before the offense conduct to which the defendant is being sentenced).

have been 110–137 months, with a mandatory minimum of 10 years.[2]  U.S.S.G. ch. 5 pt. A (2002).

In 2004 the Government filed a motion to reduce Doe's sentence because he provided "substantial assistance" to the Government in a different criminal investigation.  Fed. R. Crim. P. 35(b).  The Government requested that the District Court hold the motion in abeyance while the investigation was ongoing, which the Court did.  While the Rule 35 motion was still pending, Doe filed a § 2255 motion arguing in part that his simple assault convictions were not crimes of violence and that he was therefore wrongly sentenced as a career offender.

On April 16, 2008, the Supreme Court decided *Begay*, which held that a DUI conviction is not a "violent felony" within the meaning of the Armed Career Criminal Act (ACCA) because it does not involve "purposeful, violent, and aggressive conduct."  553 U.S. at 145.  The words and structure of the career-offender Sentencing Guideline are similar to the ACCA's.  This holding thus significantly strengthened Doe's argument (which otherwise would have certainly failed because of *Dorsey*), as the subsection of Pennsylvania's assault statute to which Doe pled guilty

---

[2] Doe faced a mandatory minimum sentence of 10 years based on his 1991 conviction for cocaine possession.  21 U.S.C. § 841(b)(1)(B)(iii) (2000).  Although, as explained above, not relevant to his Guidelines calculation, Doe's 1991 conviction set his minimum statutory sentence, as older sentences for drug crimes involving small amounts of contraband still count as prior convictions that trigger mandatory minimums under the Controlled Substances Act. *Id.*

proscribes intentional (*i.e.*, purposeful), knowing and reckless conduct. 18 Pa. Cons. Stat. § 2701(a)(1) & (a)(2). Yet, panels of this Court continued to apply *Dorsey* in nonprecedential opinions. *E.g.*, *United States v. Wolfe*, 301 F. App'x 134 (3d Cir. 2008).

The District Court appointed the Federal Defenders to represent Doe on collateral review. On April 16, 2009, one year to the day from *Begay* (and thus the last day of AEDPA's limitations period within which Doe could make an argument attacking his sentence based on that decision, *see* 28 U.S.C. 2255(f)), the District Court held an evidentiary hearing on both the Rule 35(b) and the § 2255 motions.

It indicated that it would grant Rule 35 relief but would not vacate the sentence under § 2255, and Doe's counsel withdrew the § 2255 motion. Throughout the hearing, a crucial factor for everyone was how to keep confidential that Doe was cooperating with the authorities; if his cooperation got out, he would have been in danger from other inmates. The Court and counsel engaged in a lengthy colloquy about whether they were proceeding on Doe's § 2255 motion or the Government's Rule 35 motion. Eventually, Doe's lawyer proposed the following.

> MR. LIVINGSTON [Doe's counsel]: Your Honor, what I can do at sidebar is withdraw [the § 2255 motion], but when I was asking, for the public portion of this record, the reason I made that request and the reason why I said the things I said of public record were mostly for Mr. Doe's[3] safety. When he explained—what he

---

[3] We do not note in this opinion where we have altered Doe's name.

explained to me is that he is fully expecting that the Court is going to enter a sentence today that is greater than time served and that he's going to go back to the federal place from which he came, and that inmates there, if they find out that he is now serving a lesser term of imprisonment will suspect that he came in here on a 35(b) motion. So, without of record formally withdrawing the motion, what I can say at sidebar is that Mr. Doe is not expecting relief under the 2255 vehicle.

THE COURT: But I think we have a problem then, I do, because I'm not going to grant the relief under 2255. I'm glad to grant it under 35(b) and I'm glad to keep that under seal, but I am not finding today that he's not a career offender and that his criminal history calculation in the presentence report overrepresented the actual severity of his past criminal history. So, I mean I think to do that, I almost have to say then that he's really not a career offender because I have to give those past offenses less weight and take him out of that status, and I don't find that to be true.

So I don't know how we accomplish that because that's the basis of my relief today. The basis of my relief is . . . the government having filed a 35(b) motion and telling me what they have told me today.

There followed further discussion on how to seal proceedings, and the Court addressed the defendant:

8

THE COURT: Mr. Doe, do you have any questions at all about what we've just been talking about here?

THE DEFENDANT: It's like kind of complicated to me.

THE COURT: If you want to have a little bit of time to speak with Mr. Livingston, you certainly can.

THE DEFENDANT: I would appreciate that.

(Whereupon, there was a brief pause in the proceedings.)

MR. LIVINGSTON: I've had an opportunity to discuss the procedures that we've just been going through here with Mr. Doe, and on his behalf, what I'm going to do formally is move to withdraw his pro se 2255.

The Court then granted the Rule 35(b) motion and reduced Doe's sentence by about seven years.

On May 5, 2009, Doe appealed from the grant of the Rule 35(b) motion, arguing that he was entitled to further reduction because of his wrongful classification as a career offender under the Guidelines. While that appeal was pending, we decided *United States v. Johnson*, 587 F.3d 203 (2009), which overruled *Dorsey* in light of *Begay* and held that courts must inquire into the part of the statute to which the defendant actually pled guilty in order to determine whether the career-offender enhancement applies. If the defendant pled guilty to "an intentional or knowing violation of" Pennsylvania's assault statute, he has committed "a crime of violence" within the meaning of the career-offender

9

sentencing guideline. *Id.* at 212. In looking to the part of the statute to which a defendant pled, courts are restricted to the "*Shepard* materials," namely, "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States,* 544 U.S. 13, 16 (2005).

Shortly after our Court's decision in *Johnson*, Doe filed a motion to remand his appeal to the District Court, which we denied. When we ruled on the merits of his appeal, we erroneously stated that Doe would be able to bring his *Begay* claim in a timely § 2255 motion based on our mistaken conclusion that the statute of limitations does not begin to run until a new right is deemed retroactive on collateral review. *United States v. Doe*, No. 09-2265, slip op. at 11 (3d. Cir. 2012) (sealed). In fact, the statute begins to run from the date the new right is recognized. *Dodd v. United States*, 545 U.S. 353, 360 (2005). In any event, we affirmed the sentence and held that Rule 35 was not an appropriate means for Doe to attack his underlying sentence.

After our opinion on appeal from the Rule 35 proceedings, in 2012 Doe filed a § 2255 motion, again raising his *Begay* argument. The statute of limitations for a § 2255 motion is one year, and, as stated above, begins to run the date a new right is recognized. Therefore, the statute of limitations on Doe's *Begay* argument expired on April 16, 2009, the day his lawyer withdrew his 2008 § 2255 motion. The District Court concluded that there was no basis to toll the limitations period for the 2012 motion and, in the alternative, that the 2012 motion was an impermissible second § 2255 motion. Doe filed a motion for reconsideration, arguing that the withdrawal in 2009 of his 2008 § 2255 motion was involuntary due to ineffective assistance of counsel. The District Court appointed new

10

counsel, who in 2013 filed a "supplemental" § 2255 motion and requested that the District Court either reinstate the 2008 *pro se* motion or equitably toll the statute of limitations for the 2012 motion. (The parties treat the 2012 motion and the 2013 supplemental motion collectively as one motion filed in 2012, and we do the same.) The District Court again held that there was no basis for equitable tolling and also concluded that, because § 2255 counsel was not deficient under *Strickland*, the 2008 motion should not be reinstated.

Doe appeals.

### III. Summary of Our Decision

Doe's case is unusually complex, even in the already intricate and technical areas of law under § 2255 and its cousin *habeas corpus*. We therefore begin with an overview of the questions we face and our bottom-line holdings. Readers uninitiated in the mysteries of collateral review will find the following paragraphs opaque; we hope the rest of our opinion clarifies them.

To reiterate, Doe's central claim is that he was sentenced as a career offender on the basis of two convictions for assault that should not have been considered. When he first raised this claim, our case law labeled it a loser, but the argument gained strength after the Supreme Court ruled in *Begay*.

Although Doe has been released from prison, we first hold that Doe's case is not moot, as it is sufficiently likely that, if he wins, the District Court will shorten his term of supervised release. Next, we consider whether Doe has made the substantial showing of the denial of a constitutional right that entitles him to appeal even though *Begay* was not explicitly a constitutional decision. We conclude that we

11

have jurisdiction to issue a certificate of appealability (COA); we then issue one on three threshold issues. We further decide that even though Doe's claim is arguably not cognizable on collateral review, we have jurisdiction over the case, as cognizability is not always a jurisdictional limit.

Secure in our jurisdiction, we turn to the issues on which we grant the COA and assume without deciding that Doe's 2012 § 2255 motion is not a second or successive motion over which the District Court lacked jurisdiction. We do so because, even if the 2008 motion did not count as Doe's first, the 2012 motion would have been untimely and the circumstances of this case do not call for tolling the statute of limitations.

Then we consider whether Doe was entitled to reinstate his 2008 motion under Federal Rule of Civil Procedure 60. Concluding that this is a question properly left to the District Court's sound discretion, we remand on this ground.

To make sure that our remand is not a waste of time, we consider other potential bars to collateral relief. We hold that Doe has not procedurally defaulted his claim and that in any event the Government has waived this affirmative defense. We then accept the Government's concession that *Begay* applies retroactively. Next, we hold that claims of *Begay* error are cognizable on collateral review at least where they are not defaulted and the § 2255 movant was sentenced under the mandatory Guidelines. Finally, we acknowledge that, even if Doe is unsuccessful in reinstating his 2008 § 2255 motion, he may be able to pursue the rare petition for a writ of *habeas corpus* under 28 U.S.C. § 2241.

We proceed to put some flesh on these bones.

12

## IV.    Standards of Review and Jurisdiction

We review legal determinations *de novo*, factual findings for clear error, and matters committed to the District Court's discretion for abuse thereof.

There are four jurisdictional questions in this case. First, the Government argues that Doe's appeal is moot because he is currently serving the supervised release portion of his sentence, which may not be reduced even if Doe prevails on the merits. The next question is whether we have jurisdiction to grant a COA. If we do, we reach the third question, which is whether we should in fact grant a COA so that we have jurisdiction over the merits of the case. Finally, we raise *nostra sponte* (that is, on our own) the question of whether, if *Begay* error is not cognizable in a § 2255 proceeding, the District Court lacked jurisdiction.

### A.    *Mootness*

The Government has moved to dismiss Doe's appeal as moot because, under 21 U.S.C. §§ 841(b)(1)(B)(iii) and 851, he must serve eight years of supervised release regardless of the merits of his appeal. Even if it turns out that he was incarcerated too long, the Government argues that no relief is available to him because removing the career-offender designation will not affect his supervised release.

In circumstances similar to this case, where a § 2255 movant on supervised release appealed the length of his imprisonment, we observed that the District Court could credit him with the time served in prison exceeding a lawful sentence and reduce the length of his supervised release by that amount. *United States v. Wright*, 642 F.3d 148, 155 n.7 (3d Cir. 2011). Likewise here, that Doe's eight-year supervised release term is statutorily required is no obstacle to

13

our jurisdiction because Federal Rule of Criminal Procedure 35(b), under which Doe was sentenced, "authorizes a district court to reduce any aspect of a defendant's [otherwise statutorily mandated] sentence, including supervised release terms." *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005).[4]  Because the District Court may reduce the duration of Doe's supervised release if he prevails, the case is not moot.

---

[4] The Government, in a petition for panel rehearing, argued that the "putative availability to Doe of a wholly separate procedural route to redress in the form of Rule 35(b) has no bearing on whether the instant matter is moot" because Doe's Rule 35(b) proceedings are "closed and final." Pet. for Panel Rehearing at 11. In essence, the Government's argument is that Rule 35(b) cannot help Doe in the current case because the challenge here is to his initial sentence, not to his sentence as modified by the closed Rule 35(b) proceedings. However, this overlooks that, if Doe prevails, it would necessarily mean that the District Court used an unlawful sentence as a starting point for its Rule 35(b) reduction. Because that reduction was intertwined with Doe's initial sentence, the District Court would have the authority to vacate both and revisit them *de novo* as part of its resentencing. *Cf. United States v. Diaz*, 639 F.3d 616, 620 (3d Cir. 2011) (noting that "common sense dictates" that *de novo* resentencing should be available where there is a need to "reconstruct the sentencing architecture" after one component of an interrelated sentencing scheme is vacated) (quoting *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997) (internal quotation marks omitted).

## B.  *Jurisdiction to Grant a COA*

The motions panel that referred Doe's COA request to our (merits) panel directed the parties to brief whether we have jurisdiction to issue a COA.  This phrasing bundles two distinct questions: whether we have jurisdiction to entertain Doe's request for a COA; and, if we grant a defective COA, whether that would deprive us of jurisdiction over the appeal.

We clearly have jurisdiction to consider Doe's application for a COA, as an appeal may be taken to a court of appeals if "a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1).   A COA is a "jurisdictional prerequisite" to an appeal on the merits. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal."  *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 482 (2000), and *Hohn v. United States,* 524 U.S. 236, 248 (1998)).  Section 2253 unambiguously gives us jurisdiction—as a panel or individually as circuit judges—over the threshold inquiry. *Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012) ("Congress placed the power to issue COAs in the hands of a 'circuit justice or judge.'" (quoting 28 U.S.C. § 2253(c)(1)).

As a COA is a jurisdictional prerequisite to an appeal, it was until recently arguable that a defective COA fails to give a court jurisdiction over the merits of a case.  *United States v. Cepero*, 224 F.3d 256 (3d Cir. 2000) (*en banc*), *overruled by Gonzalez*, 132 S. Ct. 641.  A COA is defective if it is issued where the applicant has made no "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Here, Doe's most substantial claim is that the sentencing Court applied an incorrect (but not in itself unconstitutional) interpretation of the Sentencing Guidelines. Therefore, the case could be made that any COA here would

15

be defective, as Doe has failed to make the required showing of the denial of a constitutional right.[5]  Under *Cepero*, if the COA were defective, we would lack jurisdiction over the appeal.  However, in *Gonzalez* the Supreme Court clarified that § 2253(c)(2) is not a jurisdictional statute.  132 S. Ct. at 649.  Therefore, even if we issued a defective COA, it would still give us jurisdiction over the appeal.

We thus have jurisdiction to decide whether to grant the COA.  It is also settled that we should not grant the COA unless Doe has made a substantial showing of the denial of a constitutional right.  Furthermore, even if we erroneously granted a COA over a non-constitutional issue, we would still have jurisdiction over the appeal.  The next question is whether we should in fact grant the COA, giving us jurisdiction over the merits of the appeal.

### C.      *Should We Grant a COA?*

Section 2253(c)(2) provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a *constitutional* right." (emphasis added).  The Supreme Court has held that, as here,

---

[5] As discussed immediately below in Part III.C, it was arguably unconstitutional to sentence Doe according to the erroneous interpretation of the Guidelines because it is unconstitutional to punish someone more severely than the law allows; however, if the Guidelines in fact meant what the sentencing Court thought they did, there would be no constitutional infirmity in Doe's sentence.

16

> [w]hen the district court denies a habeas petition[6] on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 529 U.S. at 484.

Perhaps surprisingly, there is some debate as to whether "constitutional" in § 2253(c)(1) means "constitutional" or "federal." 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 35.4b[i] & n.33 (6th ed. 2011) [hereinafter *FHCPP*] (collecting cases). This is because, pre-AEDPA, to obtain a certificate of probable cause to appeal (the term for what is now a COA), an applicant needed to make a substantial showing of the denial of a *federal* right. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). The Supreme Court since held, in *Slack v. McDaniel*, that § 2253(c) codified that standard. 529 U.S. at 483. In doing so, the *Slack* Court expressed "due note for the substitution of the word 'constitutional'" for "federal." *Id.* However, the Court did not engage in extended discussion about whether the change was meaningful. *See*

---

[6] There are significant overlaps between the law of *habeas corpus* and motions to vacate, set aside, or correct sentences under 28 U.S.C. § 2255. In quoting cases from the *habeas* context, we do not address the differences from § 2255 law except where they are relevant to this appeal.

17

*Medellín v. Dretke*, 544 U.S. 660, 678 (2005) (*per curiam*) (O'Connor, J., dissenting).  We have held that the change *was* meaningful.  *Marshall v. Hendricks*, 307 F.3d 36, 80–81 (3d Cir. 2002); *Cepero*, 224 F.3d at 265–68.  Hence, to obtain a COA, Doe must make a substantial showing of the denial of a constitutional right; a mere federal right will not do.[7]

---

[7] *Cepero* went further than saying we may not hear appeals from denials of collateral relief when the appellant *only* brings federal claims that are non-constitutional; we also held that we may not hear an appeal on any such  claim even when the appellant has made a substantial showing of the denial of an independent constitutional right (for example, under *Cepero*, if a § 2255 movant makes a substantial showing of both a *Brady* violation and a non-constitutional sentencing error, the movant may appeal only the *Brady* issue).  *But see Ramunno v. United States*, 264 F.3d 723, 725 (7th Cir. 2001) ("If the case presents a substantial constitutional question, then an independently substantial statutory issue may come along for the ride.  This is one holding of *Slack*.").

We need not decide whether this aspect of *Cepero* survives *Gonzalez*.  Our case held that we have no jurisdiction over appeals from denials of statutory claims.  After *Gonzalez*, we clearly have jurisdiction, but it is still an open question whether § 2253(c)(1) bars appellants without any constitutional claims or bars all non-constitutional claims on appeal even if a constitutional claim is alongside.  On this point *Cepero* is difficult to reconcile with *Slack* (which held that a petitioner may appeal from an adverse non-constitutional procedural decision, 529 U.S. 483–84), and *Gonzalez* may be read to undermine *Cepero* significantly, but Doe's case does not actually present the question because his

18

One important qualification is in order: even though an appellant must make a substantial showing of the denial of a constitutional right to get a COA, this aspect of our threshold inquiry is satisfied even if the claim is only *debatably* constitutional. In *Hunter v. United States*, 559 F.3d 1188, 1190 (11th Cir. 2009), the Eleventh Circuit denied a COA because *Begay* was not a constitutional decision. However, the Supreme Court vacated that judgment in light of the position in the Solicitor General's brief, which argued the proper approach would "encompass[] review of 'debatably constitutional' claims." *See* Br. of Solicitor General 9, *Hunter v. United States*, No. 09-122, 2009 WL 4099534 (Nov. 25, 2009); *Hunter v. United States*, 558 U.S. 1143 (2010). The Solicitor General's position is consistent with *Slack*'s characterization of the decision to grant or deny a COA as a threshold inquiry. The contrary stance, requiring the claim at issue to be constitutional beyond debate, would in close cases require something approaching a merits decision at the supposedly threshold COA phase. In this context, we hold that Doe may be granted a COA even if *Begay* is only *arguably* (to be clear, plausibly or subject to good faith debate) a decision of constitutional dimension. *See United States v. Martin*, 226 F.3d 1042, 1046 (9th Cir. 2000) (issuing a COA because, at the time defendant's § 2255 motion was filed, the constitutional issue was debatable, even though by the time of appeal the Supreme Court had resolved it against defendant's position); *see also Hunter*, 558 U.S. 1143.

So we come to another threshold question in this case: is Doe entitled to a COA? There are three predicate

---

only substantial claim is the *Begay* violation; either the *Begay* claim is constitutional or it's not, and we need not decide whether it can "tag along" with a clearly constitutional claim.

questions: could jurists of reason debate whether (1) *Begay* is constitutional as applied through the Sentencing Guidelines; (2) Doe has stated a valid claim of *Begay* error; and (3) the District Court rightly decided Doe's motion?

### 1.  *Begay*'s   Arguably   Constitutional   Dimension

Debate is currently fervid across the circuits on whether *Begay* is a constitutional decision; we have yet to weigh in.  Supporting Doe's position are *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), and *Whiteside v. United States*, 748 F.3d 541, 548 (4th Cir.), *rev'd on other grounds*, 775 F.3d 180 (4th Cir. 2014) (*en banc*), *cert. denied*, 135 S. Ct. 2890 (2015), both of which held that erroneously classifying someone as a career criminal under the mandatory Sentencing Guidelines arguably violates the Due Process Clause by conferring a longer sentence than the law allows. The Government argues that in this case Doe's classification, even if erroneous, did not result in an illegally long sentence (and thus comported with due process) because the top of the relevant statutory sentencing range (life imprisonment) is higher than the sentence he received (262 months).  *Narvaez* rejected that argument, as the career offender enhancement

> created a legal presumption that [Narvaez] was to be treated differently from other offenders because he belonged in a special category reserved for the violent and incorrigible.  No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence.  .  .  .  The sentencing court's misapplication of the then-*mandatory* § 4B1.1 career offender categorization in Mr. Narvaez's case was the lodestar to its guidelines calculation.

674 F.3d at 629 (emphasis in original).

A panel of the Fourth Circuit held that miscategorization as a career offender worked a "complete miscarriage of justice" without deciding whether it also violated the Due Process Clause. *Whiteside*, 748 F.3d at 548. In granting the COA, however, the Court made a threshold inquiry about whether the erroneous designation worked a constitutional deprivation and was "satisfied that . . . it [was] at least debatable that erroneous application of the career offender enhancement deprived Whiteside of his liberty in violation of his due process rights." *Id.* at 555.

By contrast, the Eighth Circuit, sitting *en banc*, held in *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (*en banc*), that: *Begay*'s analysis of the language used in U.S.S.G. § 4B1.1 presented an "ordinary question[] of [G]uideline interpretation;" because Sun Bear's sentence was within the District Court's statutory authority to impose, "no miscarriage of justice is at issue;" and the claim, far from being constitutional, was not even cognizable in a § 2255 case. The District Court in *Sun Bear* had granted a COA, and neither the panel nor the *en banc* Circuit Court discussed whether the COA was defective.

The Supreme Court has stressed that the decision to grant a COA is a "threshold inquiry" into whether "jurists of reason could disagree with the district court's resolution . . . or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Given the live debate in several circuits about whether *Begay* error in a sentencing case violates the Constitution, a debate that has resulted in a circuit split and at least two rehearings *en banc*, we join the Fourth and Seventh Circuits in holding that, whatever the final outcome, *Begay* error is debatably

21

constitutional, and therefore the word "constitutional" in § 2253(c)(2) is no bar to a COA in this case.

### 2. Doe's Arguably Meritorious *Begay* Claim

Next, we must analyze whether "jurists of reason would find it debatable whether [Doe's motion] states a valid claim of" *Begay* error. *Slack*, 529 U.S. at 484. This is easy—Doe was sentenced as a career offender because of two simple assault convictions. A career offender is someone who has been convicted of at least two crimes of violence. U.S.S.G. § 4B1.1. Simple assault is not categorically a crime of violence under the Sentencing Guidelines; rather, only knowing or intentional assaults are. *Johnson*, 587 F.3d at 210–211 & n.8.[8] In deciding whether a defendant pled guilty to a knowing or intentional assault, we are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any

---

[8] Because the Government conceded in *Johnson* that reckless assault did not qualify as a crime of violence, we saw no need to decide whether *Begay* overruled our prior holding that "purely reckless crimes may count as predicate offenses for purposes of career offender guideline." *Dorsey*, 174 F.3d at 333. We did, however, note that "*Begay* . . . made plain that only 'purposeful, violent, and aggressive conduct' may constitute a violent felony . . . [and] distinguished that sort of conduct from . . . 'a crime of negligence or recklessness.'" *Johnson*, 587 F.3d at 211 n.8 (quoting *Begay*, 553 U.S. at 144–46). The Government also concedes here that reckless conduct is not a crime of violence, Gov't Br. at 70, and we agree for the reasons quoted from *Begay* in *Johnson*.

22

explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. We have also held that a Presentence Investigation Report (PSR) can be a *Shepard* document when the defendant does not object to a factual account of a crime therein. *United States v. Siegel*, 477 F.3d 87, 93 (3d Cir. 2007).[9]

The *Shepard* materials in the record before us do not establish that Doe pled guilty to knowing or intentional conduct. We have the statutory definition of simple assault, the criminal information for Doe's first assault, the plea colloquies for both of Doe's assaults, and Doe's PSR in this case to which he did not object. A person is guilty of simple assault in Pennsylvania if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another" or if he "negligently causes bodily injury to another with a deadly weapon." 18 Pa. Cons. Stat. § 2701(a)(1) & (a)(2). To be guilty of intentional or knowing assault, the defendant must "intend[] to impair the victim's physical condition or cause her substantial pain." *Johnson*, 587 F.3d at 212. Doe's information tracks the language of the statute's first subsection and says that he "intentionally, knowingly or recklessly caused injury to another, namely David Amon to wit: by spitting on him in the face and slapping him in the left cheek area causing pain, redness and swelling to the left cheek area." App. 51. At the plea colloquy, the only

---

[9] In *Johnson*, 587 F.3d at 212, n.10, we declined, despite *Siegel*, to consider factual matter in an unobjected-to PSR on the ground that the document provided no basis to determine the defendant's *mens rea*. We need not attempt to resolve any tension between *Johnson* and *Siegel*, as the description of Doe's actions here does not provide an adequate basis to hold that he pled guilty to knowing or intentional assault.

23

reference to Doe's conduct was a question by the prosecutor, "Do you admit that you did strike him," and Doe's answer, "Yes." Tr. 12:17–19, App. 64. The PSR, to which Doe did not object, states roughly the same set of facts for Doe's second assault conviction as the information that Doe slapped the victim in the face and spat on him (the PSR adds that he spat a second time). This factual recitation is insufficient to hold that Doe's conduct was knowing or intentional. Slapping someone in the face and spitting are not violent enough for us to conclude that Doe must have intended to "impair the victim's physical condition or cause [him] substantial pain." *Johnson*, 587 F.3d at 212. Therefore, it appears that Doe has at most one conviction for a crime of violence within the meaning of the Sentencing Guidelines.

For these reasons, Doe likely was not a career offender, and, at a minimum, jurists of reason would at least find it debatable whether Doe has stated a valid *Begay* claim.

### 3. The District Court's Arguably Wrong Procedural Holdings

Third, we must determine whether jurists of reason would find it debatable that the District Court correctly dismissed Doe's motion as second or successive, denied his request for equitable tolling of the statute of limitations, and denied Rule 60 relief that would have reinstated Doe's timely 2008 motion that also challenged his career offender status. The District Court evaluated all three issues through the lens of an ineffective-assistance-of-counsel claim, deciding that, because counsel was not ineffective in withdrawing the 2008 motion, the 2012 motion was a second motion, and neither equitable tolling nor Rule 60 relief was available. We explore these points in greater detail below, but for the threshold COA question it is enough to note that the District Court engaged in the wrong analysis. Whether the 2012 motion was

24

a second motion depends on why the 2008 motion was withdrawn, not on whether it was a legitimate strategic choice. *See Thai v. United States*, 391 F.3d 491, 495 (2d Cir. 2004) (*per curiam*). As for equitable tolling and Rule 60, both require courts to inquire into the totality of the circumstances; counsel's ineffectiveness may be one factor, but it is not necessarily determinative.

### 4. Conclusion With Respect to COA

For the reasons discussed above, we grant Doe a COA on whether the District Court properly ruled that (1) his 2012 motion was his second, (2) he was not entitled to equitable tolling on his 2012 motion, and (3) he was not entitled to reinstate his 2008 motion.

### D. *Cognizability as a Jurisdictional Limit*

The Government contends that *Begay* error is not cognizable on collateral review because it is not of constitutional magnitude. Assuming for the moment the Government is correct, we do not believe (nor does the Government argue) that this sort of cognizability limitation is also a jurisdictional one. But, as we have a duty to be sure we have power to decide the case, we pause to consider any potential jurisdictional implications.

Sometimes *habeas* petitioners and § 2255 movants bring claims that are not cognizable on collateral review, and judges conclude they lack jurisdiction over those claims. *E.g.*, *Palma-Salazar v. Davis*, 677 F.3d 1031, 1038 (10th Cir. 2012); *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 1009 (9th Cir. 2012) (*per curiam*) (*en banc*) (Kozinski, J. dissenting). Other courts have indicated that cognizability is not jurisdictional. *United States v. Fung*, 935 F.2d 276, mem. at 2 (9th Cir. 1991) (not precedential) (*per curiam*). These

strands of case law are harmonized when we recognize that collateral review courts lack jurisdiction if applicants seek unavailable remedies. A *habeas* court may lack jurisdiction over a claim that does not challenge the fact, duration, or conditions of confinement because the court is powerless to afford the proper remedy for the claim, like damages (as available collateral remedies are generally release or vacating a conviction or sentence, or some combination of the foregoing, *see* 2 *FHCPP* § 33.1). In Article III terms, certain claims are not redressable on collateral review, and thus the Court lacks jurisdiction over them. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Doe's claim is not the sort of non-redressable claim over which collateral courts lack jurisdiction. He seeks to correct his sentence, and therefore he is properly proceeding under § 2255. If his claim is not cognizable, then he has failed to state a claim on which relief may be granted, but he properly invoked the District Court's jurisdiction. *Bell v. Hood*, 327 U.S. 678, 681 (1946). This distinction is not all that important to Doe's case, but as a general matter it is more than semantic because, were cognizability always jurisdictional, courts would have to raise the issue *sua sponte*. If a movant brings a non-cognizable sentencing issue and the Government only argues that the movant loses on the merits, a court may afford relief (if the movant's position is correct) regardless whether the Government could have persuasively argued that the claim was non-cognizable. By contrast, if a *habeas* petitioner seeks damages, notwithstanding the Government's position, a district court would lack authority to redress the claimed harm.

Because cognizability is not a jurisdictional bar in this case, it is discussed below after other procedural hurdles.

26

**V.  Did the 2008 Motion Count Such That Any Later Motion Was Second or Successive?**

In general, federal defendants get two conceptual bites at the apple of relief from criminal charges: first at trial (and appeal therefrom), and second by a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, the first step in what is known as "collateral review" of a trial and pretrial proceedings (the appeal from a guilty verdict is "direct review").  After an unsuccessful § 2255 motion, there is very little a defendant may plausibly ask a court to do; particularly relevant here, a defendant may not present a court with a second or "successive" (*i.e.*, third, fourth, *etc.*) § 2255 motion except in rare circumstances.  Thus, the next threshold question in this case is whether Doe's 2012 § 2255 motion is an impermissible second or successive one.

AEDPA (and, to a lesser extent, pre-AEDPA case law) puts a very high barrier between movants and relief on "[a] claim presented in a second or successive" motion.  28 U.S.C. §§ 2244(a), (b) & 2255(h).  To oversimplify, relief on a second or successive motion is only available when the Supreme Court makes a new rule of constitutional law retroactive to cases on collateral review or when newly discovered evidence clearly shows the movant is factually innocent of the crime of which he was convicted.  Doe meets neither condition; hence he cannot file a second or successive § 2255 motion.

Doe's is literally his second § 2255 motion, but "second or successive" is a term of art; the second-or-successive bar does not apply to all § 2255 motions that are filed after an initially filed motion.  *Panetti v. Quarterman*, 551 U.S. 930, 943–44 (2007) ("['Second or successive'] takes its full meaning from our case law, including decisions predating [AEDPA].").  To figure out whether the 2012

27

motion, numerically Doe's second, was also legally his second, we need to decide whether the 2008 motion "counted" as his first even though it was withdrawn. We do not have a precedential opinion addressing the precise question here: when does a voluntarily withdrawn § 2255 motion or *habeas* petition "count" so that a numerically second motion or petition will be deemed a "second or successive" filing within the meaning of § 2244?

Even though the second-or-successive bar is jurisdictional, *see Burton v. Stewart*, 549 U.S. 147, 157 (2007), we need not decide whether Doe's 2012 motion was his second because, even if it was, AEDPA's statute of limitations bars the motion. *See Olson v. United States*, 953 F. Supp. 2d 223, 229 (D.D.C. 2013) (relying on *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)), to dismiss case on statute-of-limitations grounds without deciding jurisdictional issue). As such, we assume the 2012 motion was Doe's first, and he hops out of the second-or-successive frying pan into the statute-of-limitations fire.

## VI. Statute of Limitations

The limitations period ran in 2009, one year after the Supreme Court decided *Begay*, and Doe's motion was filed in 2012. *See Dodd v. United States*, 545 U.S. 353, 360 (2005). Therefore, the motion is barred unless the limitations period is tolled.

The District Court erroneously analyzed the equitable tolling question, concluding that, because Doe's § 2255 counsel was not ineffective within the meaning of *Strickland*, equitable tolling was inappropriate. The correct standard is that equitable tolling is available when a movant shows "(1) that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

Doe has diligently pursued his rights. He filed his *Begay* claim one month *before* the case came down; he withdrew his § 2255 motion without any obvious indication that he was abandoning the *Begay* claim. He raised *Begay* on appeal; when we issued *Johnson*, he sought remand to the District Court to litigate his *Begay* claim. We denied that relief, telling Doe he could file a timely § 2255 motion; four and a half months after our mandate issued in his appeal from the Rule 35 motion, he filed the 2012 motion. Doe has taken every possible opportunity to press his case and thus satisfies the first prong of equitable tolling.

As for the second prong, the question is whether his attorney's error in dismissing his 2008 motion as meritless is the sort of "extraordinary circumstance" that entitles Doe to equitable tolling. We have "rejected the argument that an attorney's mistake in determining the date a habeas petition is due constitutes extraordinary circumstances for purposes of equitable tolling." *Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002). The failure of Doe's lawyer to anticipate *Dorsey*'s overruling is far less negligent than the error in *Johnson v. Hendricks* by a lawyer who miscalculated a well-established deadline. Indeed, Doe's lawyer was not negligent at all. And the failure to anticipate the change in the law did not impede Doe from directing his lawyer not to withdraw the motion; the colloquy at Doe's Rule 35 hearing where Doe's attorney withdrew the timely § 2255 motion to move forward with the Rule 35 relief suggests that Doe agreed with his lawyer's strategy, although without completely comprehending the consequences of that assent. Not anticipating a legal development, assuming it can even be considered a "mistake," is just the sort of ordinary mistake

that courts have held insufficient for equitable tolling. *Johnson*, 314 F.3d at 163 (collecting cases).

Moreover, while we regret misstating on his appeal from the Rule 35 hearing that Doe could file a timely § 2255 motion after our remand, it is beside the point because, even at the time of our decision, the limitations period had long passed. This is a case where a lawyer failed to foresee developments in the law, a circumstance far from extraordinary. Therefore, even if we deem Doe's 2012 § 2255 motion his first, it must be dismissed as untimely, and Doe can only win by obtaining Rule 60 relief from the withdrawal of his 2008 motion.

## VII. Was Doe Entitled to Rule 60 Relief?

The District Court denied Doe's request to reinstate his *pro se* motion on the ground that, because counsel was not ineffective in withdrawing the 2008 motion, Doe was not entitled to relief. We believe the Court should have treated Doe's request as a Rule 60 motion, and then should have asked whether the Rule 60 motion was a disguised second or successive motion and, if it was not, whether extraordinary circumstances justified granting relief.[10]

---

[10] Except in supplemental briefing we ordered, Doe does not bring up Rule 60 on appeal (he does argue that the *pro se* motion should have been reinstated, Opening Br. at 37, 38 & 42). The Government in its supplemental letter brief does not contend that a Rule 60 argument is waived, and we believe Doe may pursue it on remand. Doe sought reinstatement of the 2008 motion in his brief in support of his 2013 supplemental § 2255 motion. The Court had granted

The question whether the Rule 60 motion is second or successive is close. The Supreme Court has held that when a motion asserts that "a subsequent change in substantive law is a reason justifying relief from the previous denial of a claim . . . [,] such a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." *Gonzalez v. Crosby*, 545 U.S. 524, 531

---

reconsideration of its denial of the 2012 motion because Doe argued his lawyer had been ineffective in withdrawing the § 2255 motion in 2008; the Court allowed Doe to present his arguments through new counsel (in support of the 2012 § 2255 motion). The Court also ordered briefing on "ineffective assistance of counsel, as it relates to the grounds for denial of Defendant's [2012 § 2255] Motion via this Court's March 14 [2013] Order." ECF No. 82 at 1–2. But Doe's Motion for Reconsideration attacked counsel's performance in 2008, and in any event counsel's ineffectiveness has never been particularly relevant in this case, as Doe has no legitimate *Strickland* claim, nor has he defaulted any claim that ineffectiveness could overcome. *Cf. Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Because the confusion about the proper basis for reinstating the 2008 § 2255 motion may well have occurred at least in part because of the District Court's order, we do not consider the Rule 60 argument waived.

Doe also argues that the *pro se* motion *was* in fact reinstated when the Court granted reconsideration of its denial of his 2012 § 2255 motion in order to appoint new counsel, but this argument is plainly wrong: the Court granted reconsideration only to allow Doe to present his arguments through a counsel he had not accused of inefficacy.

31

(2005). At first glance, it would appear that *Gonzalez* forecloses Doe's motion, for it arguably "attacks the federal court's previous resolution of a claim on the merits." *Id.* at 532 (emphasis removed). However, in *Cox v. Horn* we read *Gonzalez* to hold that a change in the law "without more" is an inadequate basis for Rule 60 relief. 757 F.3d 113, 124 (3d Cir. 2014). The approach in *Cox* calls for a remand to the District Court to determine if the "more" exists.

"The fundamental point of 60(b) is that it provides a grand reservoir of equitable power to do justice in a particular case." *Id.* at 122 (internal quotation marks omitted). "[C]ourts are to dispense their broad powers under 60(b)(6) only in extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Id.* at 120. And just as "we have not embraced any categorical rule that a change in decisional law is never an adequate basis for Rule 60(b)(6) relief," *id.* at 121, it would be nonsensical to hold as a categorical matter that a person with constitutionally adequate counsel can never qualify for Rule 60(b) relief. "We have not taken that route. Instead, we have long employed a flexible, multifactor approach to Rule 60(b)(6) motions . . . that takes into account all the particulars of a movant's case." *Id.* at 122.

The most relevant factor in this case is the change in law from *Dorsey* to *Johnson*. But a change in decisional law, without more, is not enough to warrant Rule 60 relief. *Cox*, 757 F.3d at 115. It is nonetheless an important factor, as is the significance of that change. *Johnson* changed the interpretation of the Sentencing Guidelines in an important way, but it was not an obviously constitutional decision nor a decision that made any conduct or activity legal that had previously been illegal. That the law changed in a significant way cuts in favor of granting Rule 60 relief, but Doe will still

need to show "much more" to get relief. *Cox*, 757 F.3d at 115. (internal quotation marks omitted).

Doe's diligence is also an "important factor" under Rule 60(b). *Id.* at 126. For the reasons discussed above in Part VI with respect to equitable tolling, Doe has been diligent in pursuing his rights.[11]

Doe's underlying claim's merit is relevant, too. *Id.* at 124. For the reasons discussed above in connection with his COA, it appears to us (at least from the record on appeal) that the *Begay* claim has merit. Other relevant factors are the time between the dismissal of Doe's § 2255 motion and his Rule 60 motion and the nature of his sentence; here, it has been six

---

[11] The Government in its supplemental brief argues that if Doe's 2012 motion is construed as a Rule 60 motion, it would be "untimely." Gov't Supp. Br. at 4. That contention is clearly wrong. First, Rule 60(b)(6) has no built-in time limit. Second, the Government tries to argue that the 2012 motion was filed at an unreasonable time because it came 72 months after *Begay*, but the Government ignores that Doe first argued he was not a career offender *before Begay* came down and that he has since made repeated arguments both in the District Court and this Court to the same effect. Finally, the Government claims that a five-month delay (here it is actually less) between our mandate on appeal from Doe's Rule 35 motion and his 2012 motion is unreasonable. We disagree that, even if the Government were correct about the facts, five months to make a critical motion in a highly complex case is categorically unreasonable, particularly when the motion makes the same meritorious argument Doe has been making for years to no avail.

years since the 2008 motion was dismissed (though the lapse is largely due to the courts and not Doe), and he has been released from prison. Yet his motion is not moot, as discussed above. A final relevant factor is the allegation—which will be for the District Court to credit or not—that Doe disagreed with his 2008 counsel on the subject of whether to withdraw the motion and allowed him to do so only because he was confused about the proceedings.

These factors suggest that it would be within the District Court's discretion to grant Rule 60 relief, but it is not so obvious that Doe deserves relief that we would direct that Court to do so. We therefore vacate the denial of Doe's request to reinstate his 2008 § 2255 motion and remand for consideration of all the relevant factors, including those factors the parties care to brief that we have not just discussed.

But there are still more threshold issues that we must resolve to guarantee that remand is not a fool's errand in case there is a bar to relief independent of everything discussed so far.[12]

---

[12] In a letter and response pursuant to Fed. R. App. P. 28(j), the parties dispute whether the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding that the ACCA is unconstitutionally vague), applies to the career offender provision of the Sentencing Guidelines, which uses very similar language to the ACCA. We believe this issue is properly decided by the District Court in the first instance, assuming Doe obtains Rule 60 relief. If the District Court reinstates his timely 2008 motion, Doe may seek to amend it to include the *Johnson* argument. Because the need

## VIII.  Procedural Default

The Government argues that Doe defaulted his claim by not raising it on appeal when its legal basis did not exist. We disagree.  If a claim is defaulted, the default may be overcome by a showing of cause and prejudice.  When the "legal basis for a claim was not reasonably available to counsel," *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), there is "cause" for a procedural default; here prejudice is clear if the *Begay* claim is valid.  *See English v. United States*, 42 F.3d 473, 479 (9th Cir. 1994) (failure to object in the face of a "solid wall of circuit authority" contrary to movant's position did not work a default); 2 *FHCPP* § 41.4[a] ("[T]his procedural bar is inapplicable to claims that could not have been raised on direct appeal.").

The Government also concedes that it did not rely on procedural default below, but it argues that we may reach the issue on our own accord.  For that proposition it cites *Sweger v. Chesney*, 294 F.3d 506, 521 (3d Cir. 2002), a § 2254 case stating, among other things, that, in determining whether to consider an alleged default the Government has not raised, courts should consider "comity, federalism, judicial efficiency, and the ends of justice."  *Id.* (internal quotation marks omitted).  At the outset, *Sweger* and decisions from other circuits holding that courts may raise procedural default *sua sponte* are in some tension with the Supreme Court's

---

to decide whether that case invalidated the career-offender provision depends on the interpretation of a very recent Supreme Court opinion and on how the District Court will exercise its discretion over any amendment that is sought, we believe it sensible to remand this case without addressing *Johnson*.

statement in *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996), a § 2254 case, that "procedural default is an affirmative defense for the [Government]. If the . . . claim was addressed at some stage of federal proceedings, the [Government] would have been obligated to raise procedural default as a defense, or lose the right to assert the defense thereafter." And regardless of *Sweger*, § 2254 is sufficiently different from § 2255, where comity and federalism are irrelevant, that we join those circuits that have allowed courts to hold that the federal Government has waived or forfeited procedural default defenses. *See, e.g.*, *United States v. Cannady*, 126 F.3d 352, 359 (2d Cir. 1997); *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (*per curiam*); *Shukwit v. United States*, 973 F.2d 903, 904 (11th Cir. 1992) (*per curiam*); *United States v. Drobny*, 955 F.2d 990, 995 (5th Cir. 1992); *see also* 2 *FHCPP* § 41.7[b] n.20 ("Although some court decisions in the section 2254 context assert that considerations of comity may justify sua sponte judicial invocation of a procedural default even when the state's representative fails to assert a default in a timely manner, such a rationale would appear to be inapplicable to section 2255 proceedings." (citations omitted)). One crucial difference between §§ 2254 and 2255 is that § 2254(b)(3) expressly forbids federal courts from deeming the related exhaustion defense waived, and there is no parallel prohibition in § 2255, suggesting that in the § 2255 context Congress intended courts to use their traditional rules of waiver and forfeiture.

Doe spills a great deal of ink arguing that ineffectiveness of his collateral review counsel can excuse any procedural default. Br. at 43–53. Because the claim is not defaulted and the Government waived this affirmative defense, Doe's argument need not be addressed in much detail. But we note that his attorney's performance could not excuse a procedural default (if there were a default), as we

36

have held that failing to predict a change in the law is not deficient performance. *Sistrunk*, 96 F.3d at 672. We also point out that, to the extent Doe argues that ineffectiveness of collateral-review counsel can be an independent Sixth Amendment violation, *see* Br. at 53, this claim is a nonstarter. *Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." (citations omitted)).

In any event, the claim is not defaulted, and, even if it were, the Government waived the defense of procedural default.

## IX. Retroactivity

*Begay* was decided after Doe was sentenced, and therefore he can only benefit from the decision if it applies retroactively, meaning that those sentenced before *Begay* was decided may avail themselves of the rule of that case. The Government concedes that it does, and we agree. Gov't Br. at 64; *see Narvaez*, 674 F.3d at 625.[13]

---

[13] The Government argues that *Begay* is not "retroactively applicable" to Doe's 2012 § 2255 motion because it is his second and is thus not allowed. Gov't Br. at 64–65. This phrasing confuses two distinct issues, (1) whether a new rule of law is retroactive generally (usually because it is "substantive" or a "watershed rule of criminal procedure," *see Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (describing doctrine derived from *Teague v. Lane*, 489 U.S. 288 (1989)), and (2) whether in a particular case a prisoner may benefit

37

**X.    Cognizability**

The Government argues that Doe's Guidelines claim is not cognizable because it is neither constitutional nor the sort of "fundamental defect" that can be remedied under § 2255. *Hill v. United States*, 368 U.S. 424, 428 (1962). This is a difficult question and one that has divided the circuits. We hold that it is cognizable.

*A.    Supreme Court Guidance*

Before delving into the narrow question whether a challenge to the career-offender enhancement may be brought in a § 2255 motion that has no procedural defects, we review the Supreme Court's guideposts for non-constitutional claims that are cognizable in a § 2255 proceeding. As in many situations, the polar cases are easy.

In *Davis v. United States*, an interpretation of the law handed down after the defendant's conviction and appeal (the same interpretation Davis had advanced on the appeal that he

_____

from new law in a second or successive motion, *see* 28 U.S.C. § 2255(h)(2). Under *Teague*, either a rule is retroactive or it is not. By contrast, § 2255(h) imposes an independent bar for relief to the category of prisoners who have already filed one § 2255 motion, and in the context of the second-or-successive bar the language of "retroactivity" is confusing and unhelpful. Our difference with the Government on this point may be semantic, but in this technical area of law it is best to be as clear as possible. We agree with the Government that if Doe's 2012 motion is second or successive, he cannot clear the § 2255(h)(2) hurdle, but, as discussed above, we assume that the 2012 motion was Doe's first.

38

lost) rendered the defendant's conduct no longer punishable, and therefore the Supreme Court held the conviction and sentence could be challenged via § 2255. 417 U.S. 333, 343 (1974). By contrast, in *Peguero v. United States*, 526 U.S. 23 (1999), a district court failed to inform a criminal defendant of his right to appeal, as required by the Federal Rules of Criminal Procedure; Peguero did not appeal, and he sought to have his appellate rights reinstated on collateral review. Despite his failure to appeal and his lawyer's lack of advice on that right, record evidence made it clear that the defendant had independent knowledge of his right to appeal. The Supreme Court held that the District Court's noncompliance with the formal requirements of the Federal Rules of Criminal Procedure could not support a basis for collateral relief when the movant failed to bring his claim on direct appeal, and, in any event, he suffered no prejudice from the error. *Id.* at 27–28.

The lead case for filling in the space between these poles is *Reed v. Farley*, 512 U.S. 339 (1994). Although *Reed* was a § 2254 case, it was pre-AEDPA, when the cognizable claims under §§ 2254 and 2255 were coextensive. *Davis*, 417 U.S. at 343. Under *Reed*, § 2255 relief is available for nonconsitutional claims to remedy "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure," 512 U.S. at 348 (alteration in original), or when "aggravating circumstances" make "the need for the remedy afforded by the writ of habeas corpus . . . apparent," *id.* at 350. Examples of "aggravating circumstances" include "[v]iolations of statutes as to which nationally uniform interpretation is particularly important" and "[p]rejudice to important interests of the incarcerated petitioner." 1 *FHCPP* § 9.1 (internal quotation marks omitted). For example, in *Peguero*, 526 U.S. at 24–28, the Supreme Court held that because of the "general rule, that a court's failure to give a

defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error," a "district court's failure to advise a defendant of his right to appeal as required by the Federal Rules of Criminal Procedure" can "provide[] a basis for collateral relief" only if the movant "suffered . . . prejudice from the omission."

With these guideposts in mind, we turn to the circuit courts that have faced the same question presented here: whether a challenge to the career-offender Guidelines enhancement is cognizable in a § 2255 motion.

## *B.*      *Seventh Circuit*

In *Narvaez v. United States*, 674 F.3d 621 (2011), with facts similar to those here, a defendant was classified as a career offender under the Sentencing Guidelines. Because that classification was no longer valid after *Begay*, Narvaez brought a § 2255 motion. The Seventh Circuit acknowledged the "general rule" that sentencing errors are not cognizable on collateral review yet held that the case before it "present[ed] a special and very narrow exception: A postconviction clarification in the law has rendered the sentencing court's decision unlawful." *Id.* 674 F.3d at 627. The Court surveyed the five cases where the Supreme Court had considered "the issue of whether a non-constitutional, non-jurisdictional error is a miscarriage of justice on collateral review," *id.* at 627 n.11. In four of the cases, *procedural* error did not amount to a miscarriage of justice, but in *Davis* (the case where a subsequent change in decisional law rendered defendant's conduct lawful) the Supreme Court held that "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present[s] exceptional circumstances that justify collateral relief under

40

§ 2255." 417 U.S. at 346–47 (alteration in original) (internal quotation marks omitted).

For the Seventh Circuit, the difference between *Davis* and the other key cases meant that new procedural rules could not support a § 2255 claim, while new substantive ones could. *Narvaez* relied on *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010)—a case that held *Begay* retroactive because its new interpretation of the ACCA was "substantive"—to extend the reasoning in *Davis* to Narvaez's case. In particular, the *Narvaez* Court held that the difference between a ruling that limits the amount of punishment that can lawfully be imposed for given conduct and a ruling that makes punishment impermissible altogether is "one of degree, not one of kind." *Narvaez*, 674 F.3d at 628. The Court also analogized the situation of Narvaez to one who has been sentenced on the basis of materially false information, a well-established due-process violation. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). The Court concluded, "To classify Mr. Narvaez as belonging to this group [career offenders] and therefore to increase, dramatically, the point of departure for his sentence is certainly as serious as the most grievous misinformation that has been the basis for granting habeas relief." *Narvaez*, 674 F.3d at 629. *Narvaez* has been limited to cases decided (as occurred to Doe) under the mandatory Guidelines. *Hawkins v. United States*, 706 F.3d 820, 822–23 (7th Cir. 2013).

### C.     Fourth Circuit

In *Whiteside v. United States*, a panel of the Fourth Circuit reached the same conclusion as the Seventh Circuit. 748 F.3d 541, 543–54 (4th Cir. 2014), *rev'd on other grounds*, 775 F.3d 180 (2014) (*en banc*). The *Whiteside* Court first reasoned that the defendant's failure to take a direct appeal of his career-offender designation did not

foreclose collateral review. It acknowledged that Whiteside "would likely be entitled to a vacated sentence" were the case now on direct appeal, *id.* at 554, but at the time of Whiteside's conviction pre-*Begay* Circuit precedent would have barred his argument and rendered direct appeal fruitless. That the procedural posture of Whiteside's case depended less on the presentation of his claims than on the timing of the Court's own decisions "contribute[d] to the conclusion that denial of review [on collateral review would] operate[] a complete miscarriage of justice." *Id.* As the Court put it, "[Whiteside] should not be punished—and we mean literally punished, as in additional time spent in federal prison, time which the law does not countenance—for th[e] fact" that he was sentenced pursuant to case law that the Court only repudiated after the time for a direct appeal had elapsed. *Id.*

Next, the Court relied on *Peugh v. United States*, 133 S. Ct. 2072 (2013), which held that application of a later edition of advisory Guidelines recommending a higher sentence than the edition in print at the time of the crime violated the Constitution's *Ex Post Facto* Clause. The *Whiteside* Court cited *Peugh* for the propositions that Guidelines challenges can be constitutional (thus cognizable on collateral review) and that principles of fairness and justice should inform whether a defendant "was subject to a fundamental miscarriage of justice." *Whiteside*, 748 F.3d at 554. The Court concluded that, because of *Begay*, Whiteside was "not a career offender, and he should not serve a sentence that was based on his classification as one." Indeed, such a sentence is a fundamental miscarriage of justice. *Id.* The *en banc* Fourth Circuit reversed the *Whiteside* panel but did not address cognizability. 775 F.3d 180.

42

## D.    Eleventh Circuit

The panel decision in *Gilbert v. United States*, 609 F.3d 1159, 1165 (11th Cir. 2010), *rev'd on other grounds*, 640 F.3d 1293 (11th Cir. 2011) (*en banc*), used yet another line of reasoning to conclude that wrongful career-offender enhancements are cognizable on collateral review, considering the enhancement to be in substance a crime: "For federal sentencing purposes, the act of being a career offender is essentially a separate offense, with separate elements (two . . . convictions[] for violent felonies), which must be proved, for which separate and additional punishment is provided." (The Seventh Circuit echoed this reasoning in determining that challenges to career-offender status are cognizable under 28 U.S.C. § 2241. *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013).) Because Gilbert was "actually innocent" of being a career offender, he could challenge his sentence collaterally. *Gilbert*, 609 F.3d at 1165. The Eleventh Circuit *en banc* reversed the panel's decision, as it concluded the motion in question was a second or successive one, but it expressly reserved whether Gilbert's claim could have been brought in a first § 2255 motion. *Gilbert v. United States*, 640 F.3d 1293, 1306 & n.13 (11th Cir. 2011) (*en banc*).

## E.    Eighth Circuit

Although a panel of the Eighth Circuit also held that *Begay* error was cognizable on collateral review (following a similar line of reasoning as did the Seventh Circuit), the *en banc* Court reversed. *Sun Bear v. United States*, 611 F.3d 925, 931 (8th Cir. 2010), *rev'd*, 644 F.3d 700 (8th Cir. 2011) (*en banc*). The *en banc* decision is straightforward: because the defendant's sentence was statutorily authorized, there was no miscarriage of justice, and his claim was not cognizable on collateral review (even though he was sentenced pursuant to the mandatory Guidelines). *Sun Bear*, 644 F.3d at 705.

### F.    *Our Dicta*

In *Cepero*, we faced a question of Guidelines interpretation and held that we lacked jurisdiction over the appeal because it was not a constitutional issue.  We then "confront[ed] the specter that Congress has now differentiated between the type of § 2255 petition that may be filed in district court and the type that may be appealed to this court." *Cepero*, 224 F.3d at 265.  We acknowledged that "[s]ection 2255 petitioners may allege and have adjudicated non-constitutional issues in district court." *Id.*  In coming to this conclusion, we relied on the statute providing that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the *Constitution or laws* of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." *Id.* (emphasis in original); *accord United States v. Gordon*, 172 F.3d 753, 754 (10th Cir. 1999) ("Congress, in enacting § 2253(c)(2), differentiated between the type of petition that can be filed and the type that can be appealed.  Petitions may be filed in district court alleging violations of the Constitution *or* federal law. The claims may only be appealed, however, if they involve the denial of *constitutional* rights." (citation omitted) (emphases in original)).  Even if the advisory Guidelines are arguably not "law," there is no doubt the mandatory Guidelines were. *United States v. Booker*, 543 U.S. 220, 234 (2005).  The discussions in *Cepero* and *Gordon* strongly suggest that any violation of the "laws of the United States" is cognizable (and therefore that Guidelines error is too), but the analyses are *dicta*, as those cases turned on the appealability of claims rather than their cognizability in the district courts.

44

## G.     The Government's Argument

The Government has an impressively long string cite for the proposition that "federal appellate courts . . . faced with the question of whether an error in calculating the Guidelines is cognizable on post-conviction collateral review[] have ruled consistently that they are not."  Br. at 37.  Surprisingly, only two of the twelve cases the Government cites—*Sun Bear*, 644 F.3d at 704 & *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)—actually support this proposition.  The others are not relevant, as either they do not discuss the cognizability of sentencing errors in § 2255 motions before district courts, *United States v. Manigault*, 395 F. App'x 831, 834 (3d Cir. 2010), or they stand for the proposition that sentencing errors that were defaulted at sentencing or on direct appeal may not be brought *for the first time* in a § 2255 motion.  *Graziano v. United States*, 83 F.3d 587, 589–90 (2d Cir. 1996) (*per curiam*) ("Insofar as claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional, we join several other circuits in holding that, absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal."); *Scott v. United States*, 997 F.2d 340, 340 (7th Cir. 1993) ("In 1990 Phillip D. Scott was sentenced to 57 months' imprisonment.  He did not appeal."); *Hill*, 368 U.S. at 425 ("There was no appeal."); *Knight v. United States*, 37 F.3d 769, 771 (1st Cir. 1994) ("Knight did not appeal from his federal sentence."); *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999) ("Neither Mikalajunas nor Largent pursued an appeal."); *United States v. Kinder*, 69 F.3d 536 (5th Cir. 1995) (not precedential) (*per curiam*) (unclear whether Kinder appealed his career offender designation, *see United States v. Kinder*, 980 F.2d 961, 962 (5th Cir. 1992)); *Gibbs v. United States*, 655 F.3d 473, 475 (6th Cir. 2011)

45

("Gibbs acknowledges that he failed to raise his U.S.S.G. § 4B1.1 claim on direct appeal and that the claim is therefore procedurally defaulted."); *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) ("[T]he appeal was dismissed pursuant to Burke's motion for voluntary dismissal."); *United States v. Coley*, 336 F. App'x 933, 936 (11th Cir. 2009) (*per curiam*) ("Coley did not raise this issue on direct appeal. In fact, it appears that he filed no direct appeal at all."). For the reasons discussed above, Doe has not defaulted his *Begay* claim, and therefore the Government's cases (with the exception of *Sun Bear* and *Williamson*) are not on point.

The Government also strenuously argues that there is no reason to think that Doe would receive a reduction in his sentence were he resentenced because it filed an information under 21 U.S.C. § 851 that enhanced Doe's statutory sentencing range based on his prior drug conviction to a mandatory minimum of 10 years and a maximum of life. But the Government ignores that Doe was sentenced at the bottom of the mandatory Guidelines range (262 months) and that the Court at sentencing expressed its regret that the Guidelines forced it to impose such a high sentence. Tr. 13:15–19, S. App. 155 ("[T]here is not much room for discretion here. There is a guideline sentence that I am required to follow under the law and it's a very stringent sentence. It is very strict and it's very, very difficult to impose."). As discussed above regarding mootness, even though Doe could receive the same sentence on remand, the available facts suggest the likely outcome is otherwise.

### H.    Synthesis and Conclusion With Respect to Cognizability

The Government does not seriously grapple with the precise issue here, which is whether erroneous sentencing as a *career offender* is cognizable on collateral review, not

46

whether *any* Guidelines error can be raised on § 2255. We have no precedential opinion on either question (though, as noted above, *dicta* from *Cepero* supports Doe), and there is a circuit split on the former one.

We hold that the claim is cognizable, at least in cases arising under the mandatory Guidelines. In reaching that conclusion, we do not adopt wholesale the reasoning of any of the circuit courts that have so held; instead, we start from the Supreme Court's guidance in *Reed* and *Peguero*. The former case stands for the proposition that a nonconstitutional error can be cognizable in the presence of "aggravating factors." *Peguero* allows for claims attacking a district court's failure to comply with the Federal Rules of Criminal Procedure when those claims prejudice the defendant. We believe the incorrect computation of a mandatory Guidelines range based on misclassification of the defendant as a career offender is at least as serious as the error discussed in *Peguero* and thus should also be cognizable where the mistake prejudices the defendant.

This holding is consistent with the *dicta* of *Cepero*. We further agree with the *Narvaez* Court that *substantive* error, like more time in prison, is doubtless more serious than *procedural* error, like failure by a court to advise someone of appellate rights (the claim in *Peguero*). And as *Narvaez* recognizes, § 4B1.1 "involves the classifying of an individual as belonging to a subgroup of defendants, repeat violent offenders, that traditionally has been treated very differently from other offenders." 674 F.3d at 629. However, unlike *Narvaez*, we do not read the Supreme Court's cases as having drawn a bright line between, on the one hand, procedural (therefore not cognizable) claims, and, on the other, substantive (hence cognizable) ones.

Further, the *Whiteside* Court was correct to draw some support from *Peugh*. Although, as a direct appeal about an *ex post facto* challenge to wrongful calculation of the advisory Guidelines, *Peugh* is entirely distinguishable from *Doe*, the case does acknowledge the importance, even the primacy, of the Sentencing Guidelines to criminal defendants. Specifically, the Supreme Court cautioned courts that "sentencing decisions are anchored by the Guidelines," *Peugh*, 133 S. Ct. at 2083, that "[t]he Sentencing Guidelines represent the Federal Government's authoritative view of the appropriate sentences for specific crimes," *id.* at 2085, and that "the range is intended to, and usually does, exert controlling influence on the sentence that the court will impose." *Id.* This description carries even greater force in the context of mandatory Guidelines because before *Booker* the Guidelines "ha[d] the force and effect of laws," *United States v. Booker*, 543 U.S. 220, 234 (2005).

*Booker* and *Peugh* render implausible the *en banc* Eighth Circuit's analysis that if a sentence is statutorily authorized, even if not allowed by the mandatory Guidelines, it is categorically legal and therefore cannot be challenged on collateral review. We look to the actual world of sentencing, which before *Booker* and even today relied far more heavily on the Guidelines than on statutory ranges. Moreover, and more importantly, the Supreme Court has not taken such a categorical approach to cognizablility on collateral review, as it has strongly suggested, if not held, that collateral challenges to applications of the Federal Rules of Criminal Procedure are permitted where the movant has been prejudiced. In short, *Reed*'s recognition that nonconstitutional error may be cognizable in § 2255 proceedings, *Peguero*'s acknowledgement that prejudicial violations of the Rules of Criminal procedure are cognizable, *Cepero*'s *dicta* that any violation of the "laws of the United States" may be corrected on collateral review, *Booker*'s emphasis that the mandatory

48

Guidelines are law, *Peugh*'s understanding that even the advisory Guidelines exert considerable force over sentencing, and the significance of a career-offender designation, lead us to conclude that misapplication of the mandatory career-offender Guideline, when such a misapplication prejudices the Defendant, results in a sentence substantively not authorized by law and is therefore subject to attack on collateral review where the claim is not defaulted.

Our holding is narrow, and we do not consider challenges to the advisory Guidelines, procedural Guidelines error, provisions other than career-offender designation, defaulted claims, or Guidelines errors that do not cause prejudice.

## XI.    Savings Clause

We note one final issue that the parties do not brief: § 2255 is not a complete substitute for a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241. Section 2255(e), referred to as the "savings clause," provides that "[a]n application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section[] shall not be entertained . . . unless it . . . appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

We do not decide here whether Doe could properly petition for a writ of *habeas corpus*, but we note that Doe's situation seems to fall between two of our cases. *Compare In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997) (prisoner may petition for *habeas* when intervening Supreme Court case rendered conduct of which he was convicted no longer criminal), *with Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (prisoner may not petition for *habeas* where

49

intervening Supreme Court case changed the identity of factfinder and burden of proof on facts affecting sentence).

The Seventh Circuit in a case with factual similarities to this one held that the second-or-successive bar rendered § 2255 inadequate to challenge a sentence after *Begay* when the petitioner's first § 2255 motion was brought at a time when our Third Circuit precedent foreclosed his argument. *Brown*, 719 F.3d at 588. (Seventh Circuit law governed the § 2241 petition because Brown was incarcerated in Indiana; the § 2255 motion was governed by our law, as Doe was convicted in Pennsylvania.) However, the Eleventh Circuit rejected the same argument in *Gilbert*. 640 F.3d at 1295. We do not decide which of these cases we believe is correct.

## XII. Conclusion

Doe argued that he was not a career offender before *Begay* came down. He was right when his lawyer, the District Court, and our Court were wrong. After the Supreme Court clarified the law, the District Court, our Court, and Doe's lawyer persevered in our error. We caused unfortunate and unwarranted hope by informing Doe in his appeal from the Rule 35 motion that he could still bring a timely § 2255 motion. We regret that this case proves wrong Justice Holmes's optimistic statement that collateral review "cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved, opens the inquiry whether they have been more than an empty shell." *Frank v. Mangum,* 237 U.S. 309, 346 (1915) (Holmes, J. dissenting). AEDPA's procedural obstacles hobble the meritorious and frivolous claims alike; while they have not stopped Doe, they may yet, and in any event they have slowed his progress considerably. We vacate

50

the judgment of the District Court and remand for further proceedings.